William T. FARR, Petitioner-Appellant,

v.

Peter J. PITCHESS, Sheriff of Los Angeles County, Respondent-Appellee.

No. 72–3171.

United States Court of Appeals, Ninth Circuit.

Aug. 7, 1975.

Rehearing and Rehearing En Banc Denied Sept. 12, 1975.

Mark E. Hurwitz (argued), Orange, Cal., for petitioner-appellant; A. L. Wirin, Fred Okrand, Laurence R. Sperber, John D. O'Loughlin, American Civil Liberties Union, Los Angeles, Cal., filed an amicus curiae brief.

William F. Stewart, Deputy County Counsel (argued), Los Angeles, Cal., for respondent-appellee.

## OPINION

Before BROWNING and CHOY, Circuit Judges, and McNICHOLS,* District Judge.

* Honorable Ray McNichols, Chief Judge, United States District Court for the District of Idaho, sitting by designation.

McNICHOLS, District Judge:

This appeal presents the no-longer novel question regarding the extent of protection afforded by the First Amendment "free press" provision to a newspaper reporter who resists judicially ordered disclosure of his news sources. William T. Farr, appellant, is a newsman who was sent to jail by a California State Court after being adjudged in contempt for refusing to name the allegedly confidential suppliers of certain information. Unsuccessful in obtaining relief in the state courts, he sought a Writ of Habeas Corpus in the United States District Court. His petition was denied and the instant appeal ensued. Jurisdiction below was based on 28 U.S.C. § 2254; our jurisdiction is found in 28 U.S.C. § 1291.

The controversy initially arose against a background of the widely publicized Los Angeles trial of Charles Manson and his "family" for first-degree murder. The state trial judge, mindful of his obligation to take such steps as the circumstances required to insure a fair trial to the defendants, undertook to control the release of prejudicial information. To avoid publication of out-of-court statements, an order was promulgated prohibiting any attorney, court attache, or witness from releasing for public dissemination the contents or nature of proposed trial testimony or other evidence.

Subsequent to the entry of this order, and during the early course of a lengthy trial, the Deputy District Attorney, having responsibility for the prosecution, obtained the written statement of one Virginia Graham, a potential witness. This statement purported to report a confession made to Graham by Susan Atkins, a Manson co-defendant. The confession, as related, implicated Manson and revealed plans by Manson and others to murder, in a most bizarre manner, several show business personalities. Pursuant to court directives, each attorney of record and the judge were provided a transcript of the Graham statement. No other copies were to be released.

The court found the statements to be inadmissible as evidence against the defendants.

Enter the petitioner-appellant, William T. Farr, then a reporter for the Los Angeles Herald Examiner, assigned to cover the Manson trial. A few days after the Graham statement had been delivered to counsel and determined to be inadmissible as evidence, Farr obtained two copies, apparently from two, separate individuals. Word of this breach of security was somehow communicated to the trial judge who summoned appellant to his chambers. An extensive colloquy ensued, the details of which are not relevant here, in view of the disposition we make of the case. It is sufficient to note that Farr rejected the invitation of the judge to disclose the name or names of those from whom he received copies of the Graham statement. Farr indicated that he had promised confidentiality to the two persons involved.

The following day's edition of the Herald Examiner carried Farr's by-line over a story with full and lurid details curried from the supposed confession disclosed in the Graham statement.

Seven months later, and one month after a jury verdict against the Manson defendants had been entered, the trial judge formally ordered appellant to appear and show cause why he should not be compelled to disclose the names of the persons who had supplied him with copies of the Graham statement. The purpose of this proceeding was to uncover the identity of those persons violating the publicity order. After a series of hearings at which the then living attorneys involved each denied, under oath, having given the material to the newsman, and at which Farr continued to refuse to answer specific questions as to identity, appellant was adjudged to be in contempt and ordered incarcerated until he divulged the names.

Appellant's brief raises four separately stated constitutional grounds for relief on each of which it is contended the trial judge erroneously ruled. We have deter-

mined that only the First Amendment issue involving the construction and effect of the free press provision merits discussion.[1]

Farr contends that, under the facts of this case, he had a right, protected by the First Amendment provision regarding free press, to refuse to disclose to the court the names of the individuals who had furnished him newsworthy information under a promise of confidentiality. In taking that position he concedes, as he must, that the persons, whose identity he protects, were, to his knowledge, forbidden by court order to supply the very information he received. It likewise must be accepted factually that the ostensible purpose of the court order was to protect the right of the Manson defendants to a fair trial, free of prejudicial publicity.

The pertinent language of the First Amendment to the Constitution of the United States provides: "Congress shall make no law[s] . . . abridging the freedom of speech, or of the press; . . .". Until very recent times, it was not seriously thought by most that this provision of the First Amendment gave any personal right to a newspaper reporter to keep confidential his sources of information. Historically, freedom of the press, as guaranteed by the Constitution, meant absence of restraint upon publication usually prior to publication, i. e., censorship. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Garland v. Torre*, 259 F.2d 545 (2nd Cir. 1958).

A change has been in the making in more recent times. Several states have enacted legislation aimed at carving out a privilege against disclosure of news sources. The Congress of the United States has flirted with such legislation. More in point, the Supreme Court of the United States has considered the question and appears to have fashioned at least a partial First Amendment shield available to newsmen who are subjected to various demands to divulge the source of confidentially secured information. *Branzburg v. Hayes, In re Pappas*, and *United States v. Caldwell*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), form a trilogy of cases reported together and generally hereafter terminated *Branzburg*, wherein the Supreme Court faced the question of the right of the grand jury to require disclosure by newsmen. Justice White wrote for four justices and the short concurrence of Justice Powell was needed to obtain a plurality. The *Branzburg* Court dealt precisely with the First Amendment free press provision as it affected testimony sought to be produced before a grand jury. However, the opinion appears to teach broadly enough to be applied to other civil or criminal judicial proceedings as well. Recent cases have so held. *Carey v. Hume*, 160 U.S.App.D.C. 365, 492 F.2d 631 (1974), *petition for writ of certiorari dismissed pursuant to Rule 60*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *United States v. Liddy*, 155 U.S.App.D.C. 382, 478 F.2d 586 (1972); cf. *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972) at 1090, *et seq., on motion for rehearing*.

It is clear that *Branzburg* recognizes some First Amendment protection of news sources. The language of the case likewise indicates that the privilege is a limited or conditional one. The precise holding of *Branzburg* subordinated the

---

1. (a) Appellant contends he was deprived of his right to a fair trial because of the bias and prejudice of the state judge. (b) Denial of due process is predicated on a claim that the same trial judge misled and misinformed Farr as to the effect of an existing California State immunity statute. (c) Denial of due process is purportedly bottomed on an argument that, because of the running of the statute of limitations, those who furnished the information to Farr can no longer be prosecuted for disobeying the court order against publicity, and appellant should no longer be required to purge himself of contempt. To the extent that these issues were properly before the district court, that court correctly found the record was clearly contrary to appellant's contentions.

right of the newsmen to keep secret a source of information in face of the more compelling requirement that a grand jury be able to secure factual data relating to its investigation of serious criminal conduct.

■ The application of the *Branzburg* holding to non-grand jury cases seems to require that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest.

■ The trial judge accurately read *Branzburg* and succinctly set the issue in his well-reasoned *Memorandum of Decision and Order* (at page 183 of the Clerk's Transcript):

"It appears to the court that *Branzburg* applies here a *fortiori*. For here we have posed the question of whether, assuming some form of First Amendment protection for the newsman's source, it must not yield to a higher value, *i. e.*, to the due process guarantee of fair trial to a defendant in a criminal case."

As he prepared to conduct the trial in the Manson case, the state court judge issued an order regulating certain acts of the attorneys and court personnel before him. The order, in the opinion of the judge, was necessary to preserve a fair trial for the defendants charged with a capital offense. The validity of that order was not questioned, but the order was flagrantly disobeyed. The court, in an attempt to discover which of the proscribed persons had violated the order, formally and fairly ordered the appellant to furnish the names of the violators. He unequivocally refused. This constituted a direct challenge to the power and duty of the court to protect its processes and to guarantee due process to the accused person.

Thus, the First Amendment protection announced by *Branzburg* collided head-on with a compelling judicial interest in disclosure of the identity of those persons frustrating a duly entered order of the court. Thus, also, is presented the specific question raised by this appeal— which of these conflicting rights is paramount?

■ In a criminal case the trial judge has a duty and obligation to attempt to protect the right of the defendants to a fair trial, free of adverse publicity. Where the case is a notorious one, that burden on the court is heavy. The most practical and recommended procedure to insure against dissemination of prejudicial information is the entry of an order directing that attorneys, court personnel, enforcement officers and witnesses refrain from releasing any information which might interfere with the right of the defendant to a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The language of the *Sheppard* Court is not equivocal. The duty of the court to enter such orders and the authority for enforcement are spelled out:

"If publicity during the proceedings threatens the fairness of the trial, a new trial should be ordered. But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures." *Sheppard v.*

*Maxwell, supra,* at 363, 86 S.Ct. at 1522.

As indicated, the purpose of eliminating collaboration between counsel and the press is to protect the constitutionally guaranteed right of the defendants in criminal cases to due process by means of a fair trial. That constitutional right cannot be so protected if the authority of the court to enforce its orders is diluted. If the newsman's privilege against disclosure of news sources is to serve as a bar to disclosure of the names of those who disobey the court order, then the court is powerless to enforce this method of eliminating encroachment on the due-process right of the defendants.

The district court properly considered the factual situation, and struck a balance between the protection afforded appellant by the First Amendment and the necessity that the newsman's source be revealed so that meaning could be given to the power and duty of the court to enter enforceable orders to protect the due-process right of accused persons. The court below concluded that the newsman's privilege must yield to the more important and compelling need for disclosure.

We hold that, under the facts presented by this record, the paramount interest to be protected was that of the power of the court to enforce its duty and obligation relative to the guarantee of due process to the defendants in the on-going trial.

Farr, therefore, was not constitutionally protected in his refusal to identify those who violated the proper order of the court. His ultimate decision to act on his mistaken belief and refusal to comply with the direct and proper questions directed to him by the court constituted contempt of a lawful order of that court. His subsequent incarceration was not in violation of any federally guaranteed constitutional right. The trial court did not err in dismissing the Petition for Writ of Habeas Corpus.

Affirmed.