**UNITED STATES of America**

v.

**Gregory J. DePALMA, Eliot H. Weisman, Richard Fusco, a/k/a "Nerves", Murad Nersesian, a/k/a "Mike Fusco" and "Mickey Coco", Leonard Horwitz, a/k/a "The Fox", Laurence I. Goodman, Salvatore J. Cannatella, Louis Pacella, a/k/a "Louie Dome", and Thomas Marson, Defendants.**

**No. 78 CR 401.**

United States District Court, S. D. New York.

March 13, 1979.

---

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City by Nathaniel H. Akerman, Scott G. Campbell, Asst. U.S. Attys., New York City, for plaintiff.

Litman, Friedman, Kaufman & Asche, New York City, for defendant Goodman by Richard Asche, New York City, of counsel.

Robert L. Ellis, New York City, for defendant DePalma.

Norman Ostrow, New York City, for defendant Weisman.

Martin B. Adelman, New York City, for defendant Fusco.

Cohn, Glickstein, Lurie, Ostrin & Lubell, New York City, for defendant Horwitz by Jonathan W. Lubell, Mary K. O'Melveny, New York City, of counsel.

Segal & Hundley, New York City, for defendant Cannatella by Marvin B. Segal, New York City, of counsel.

Barry I. Slotnick, New York City, for defendant Pacella.

## OPINION

SWEET, District Judge.

■ The defendants here were charged in an Indictment, now consisting of 22 counts, with having committed racketeering, securities and bankruptcy fraud and obstruction of justice. Not all defendants were named in all counts. In the closing days of the initial twelve week trial, the defendants moved for a mistrial, alleging prosecutorial misconduct which resulted in the publication of a photograph on pages 94–95 of the January issue of *Life,* a national magazine. The photograph, depicting certain of the defendants, one Frank Sinatra, and other individuals, is allegedly an unredacted version of Government Exhibit 18–I, and its release by the prosecutor to the press would constitute a violation of Rule 8 of the Rules of the Southern District of New York.

■ Upon voir dire examination of the jury by the court it was established that, in accordance with the court's consistent—indeed, almost daily—directions, no juror saw the unredacted photograph. Thus, even if the publication of the photograph was found to have resulted from a violation of Rule 8, it has been established that the trial was unaffected. The first trial has since ended in a mistrial, thereby mooting defendants' mistrial motion. Defendants now argue that a dismissal of the underlying Indictment is in order. Though the defendants have a right to a trial free from prosecutorial misconduct, *U. S. v. Jacobs,* 547 F.2d 772 (2d Cir. 1976), the interests of justice require that the defendants' motion be denied, even assuming, arguendo, that their allegations of misconduct were true.

As published in *Life,* the unredacted photograph contained three additional people described in the accompanying caption as Joe Gambino, Salvatore Spatola, and Paul Castellano, the brother-in-law and cousin of Carlo Gambino. The latter Gambino is present in both the redacted and unredacted versions, and is described in the *Life* caption as "the famed Mafia boss of bosses."

This court, faced initially with a request for sequestration by the Government, chose instead to rely upon Rule 8 in an effort to prevent unauthorized publicity. Press coverage of the trial was at times extensive, but the jurors responded in the negative to the court's repeated examinations on this subject. Obviously, in any trial, scrupulous adherence to Rule 8 is required. This is

particularly true in the instant case, in which charges of racketeering, securities fraud, bankruptcy fraud, and obstruction of justice are put forth, and where theatrical personalities, both professional and otherwise, are involved.

Initially the defendants demonstrated to the court's satisfaction that they had met their prima facie burden to justify a hearing on the issue. An examination of Government Exhibit 18–I and the *Life* picture indicated that they were the same, both as to people, positioning and appearance; moreover, both bore an unexplained, unique distortion on the sides of the photograph. The defendants jointly adopted the subpoenas issued by the defendant Gregory DePalma ("DePalma") seeking the testimony of certain agents of the Federal Bureau of Investigation ("FBI") and of employees of Time-Life having knowledge of the facts. Agents Fisk and Walker testified. Time-Life moved to quash the subpoena. The motion is granted.

Assistant United States Attorney Nathaniel Akerman ("AUSA Akerman") testified that he received Government Exhibit 18–I from the Los Angeles office of the FBI on the eve of trial, that it was kept in a safe in a room near his office, that the key to the safe was kept in his desk, that his office was customarily locked in his absence, that only Assistant United States Attorney Scott Campbell ("AUSA Campbell") had access to the safe, and that he had not released Exhibit 18–I to Time-Life, that he had no knowledge of the identity of the person who had provided the photograph, and that he had requested the FBI to conduct an investigation on the subject. AUSA Akerman also testified that upon learning on December 26, 1978 of the *Life* publication of the photograph, he consulted his superiors and representatives of the media, particularly the *Daily News,* the only metropolitan newspaper that would publish prior to the time that the matter could be brought to the court's attention. AUSA Akerman released Government Exhibit 18–I to the metropolitan press mid-afternoon on December 26.

Agent Walker testified that Government Exhibit 18–I was received in the Los Angeles office of the FBI early in 1977, that it was sent to the Washington laboratory of the FBI for reproduction, that additional photographs of a very similar nature were received, that copies of both photogaphs were distributed to various offices of the FBI, that an agent of the FBI of the squad with appropriate jurisdiction had access to the files where the photograph was maintained. Agent Fisk testified that a copy of the photograph had been received in the New Rochelle office of the FBI.

Time-Life submitted affidavits in support of its motion to quash, stating that the photograph published in the January issue of *Life* had been obtained by Sandy Smith, currently a senior correspondent for *Time* magazine, from a source who had supplied the photograph on the understanding that the identity of the informant would be maintained in confidence. Time-Life states that no officer or employee other than Smith had knowledge concerning the source of the photograph. These facts are set forth because of the potential constitutional confrontation thus presented.

Time-Life sought to quash the subpoena on the ground that Smith was not properly before this court. Defendants maintain that Time-Life is required to produce its employee with knowledge of the facts. To quash the subpoena on the ground of failure to serve Smith would have resulted in an unwarranted procedural delay.

The balance here tips differently than it did in *Farr v. Pitchess,* 522 F.2d 464 (9th Cir. 1975). *See,* for a related matter, 409 U.S. 1243, 93 S.Ct. 593, 34 L.Ed.2d 655 (1973) (Opinion in Chambers; Douglas, J.). This court upon reviewing the testimony as set forth above has concluded that the Government has directly rebutted the defendants' claim of prosecutorial misconduct, and that insufficient evidence has been presented to conclude that a further inquiry is warranted. While there has been some indication that Smith might testify as to whether or not he received the photograph from the United States Attorney's office,

920

defense counsel have indicated that such testimony would not rebut a chain of responsibility which ultimately might be linked to AUSA Akerman. A full scale confrontation with Time-Life's First Amendment rights would thus be unavoidable. The temptation to plunge into this intricate and difficult question of conflicting constitutional freedoms is almost, but not quite, irresistable. It will be postponed to a later day when the issues are closer to those presented in *Farr v. Pitchess, Id.*

Crediting AUSA Akerman's testimony, unshaken under cross-examination, this court concludes that defendants have failed to establish a compelling reason to challenge Time-Life's asserted constitutional rights. Were this testimony to be sought in an investigation of a possible obstruction of justice, a very real possibility—if not probability—under these circumstances, the result might be quite different.

Defendants' motion for mistrial, or alternatively, for dismissal of the Indictment, is denied. Motion of Time-Life to quash the subpoena is granted. Submit Order.

IT IS SO ORDERED.