**UNITED LIQUOR COMPANY, Plaintiff,**

v.

**Gary GARD and Ira John Doe, Defendants.**

**Civ. No. 78–999 PHX–CAM.**

United States District Court, D. Arizona.

July 18, 1980.

Motion for Reconsideration Denied Oct. 27, 1980.

---

**124**

James F. Powers, Powers, Ehrenreich, Boutell & Kurn, Phoenix, Ariz., for plaintiff.

James F. Henderson and Dean G. Kallenbach, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for witness Seper.

James P. Loss, U.S. Atty., Phoenix, Ariz., S. Martin Teel, Jr., Atty., Dept. of Justice, Tax Div., Washington, D.C., for defendant Gard.

## OPINION AND ORDER

MUECKE, Chief Judge.

This action is brought pursuant to 26 U.S.C. §§ 6103 & 7217, and 28 U.S.C. § 1340. Plaintiff alleges that an unnamed Internal Revenue Service agent revealed certain "return information", within the meaning of 26 U.S.C. § 6103(b)(2), to Jerry Seper, a reporter for a local newspaper, in violation of 26 U.S.C. § 6103(a).

On March 21, 1979, plaintiff moved to compel Jerry Seper to disclose the name of the I.R.S. agent who allegedly disclosed certain "return information" to him in violation of the laws of the United States.[1] After a hearing on May 14, 1979, the Court took the matter under advisement and further ordered that plaintiff undertake further discovery of Internal Revenue Service agents whom Jerry Seper admitted know-

---

1. The second amended complaint does not allege that Seper and/or his employer published the information obtained from the Internal Revenue Service agent, and neither Seper nor his employer are named as defendants in this action. However, the complaint does allege that the disclosure of the "return information" to Seper and the manner thereof were harmful to plaintiff and to its business and business reputation. ¶ IV, Second Amended Complaint. Were these the only allegations of harm before the Court the Court might have reached a different conclusion than it does. However, Seper, in his response to the original motion to compel, states that the complaint "apparently" grew out of a series of articles which appeared in the Arizona Republic, a daily newspaper, in December, 1978, and January, 1979. The articles outlined an IRS investigation into plaintiff's affairs, and stated that an IRS agent was the source of the information contained in the articles.

ing or talking to. The Court instructed plaintiff to advise the Court of the results of the further discovery so that the Court could consider the results of the discovery in deciding plaintiff's motion to compel.

On April 28, 1980, plaintiff filed a renewed motion to compel discovery alleging that further discovery has been fruitless. The witness, Jerry Seper, has responded to said motion. Neither party has requested oral argument and the Court therefore deems the matter submitted for disposition in accordance with Rule 11(f) of the local rules of practice.

Seper objects to plaintiff's motion to compel on the grounds that his sources are not subject to disclosure by virtue of (a) A.R.S. § 12–2237, the Arizona statute which provides for a reporter's privilege, and (b) the First Amendment to the United States Constitution. For the reasons stated herein the Court must grant plaintiff's motion to compel discovery and overrule Seper's objections.

■ This action is brought under 28 U.S.C. § 1340. This is not a diversity case, and State law does not supply the rule of decision. Rule 501, Federal Rules of Evidence, Title 28, United States Code, provides that, except in those instances in which the State law supplies the rule of decision, the federal law of privilege applies. The legislative history of Rule 501 supports the Court's construction of the rule. *See* 1974 U.S.Code Cong. & Admin. News, pp. 7051, 7098, 7100–01 (Conf.Rep. No. 93–1597, Joint Explanatory Statement of the Committee of Conference). *See also* *Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973). Thus, the federal courts do not recognize, in non-diversity cases, state-created privileges such as that which Seper seeks to assert here. For the reasons stated above, *Mazzella v. Philadelphia Newspapers, Inc.*, 479 F.Supp. 523 (E.D.N.Y.1979), and similar cases, have no bearing on the outcome of this case since they are diversity cases in which State law supplies the rules of decision. Rule 501, Federal Rules of Evidence, 28 U.S.C.

■ The First Amendment also does not provide an absolute privilege which prohibits discovery of reporters' sources. In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the United States Supreme Court held that the First Amendment rights to free speech and freedom of the press were not abridged by requiring newsmen to appear and testify before grand juries. *Branzburg, supra*, 408 U.S. at 667, 92 S.Ct. at 2649–50. The Court observed that First Amendment rights do not invalidate every incidental burdening of the press, and further that publishers have no special immunity from the application of general laws, including the Fair Labor Standards Act and the tax laws. *Id.* at 682–83, 92 S.Ct. at 2657. The Court also noted that publishers may be held liable for defamation and punished for contempt. *Id.* at 683–84, 92 S.Ct. at 2658.

In addition, the Court stated that "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Id.* at 684, 92 S.Ct. at 2658. It is a privilege of this magnitude that Seper claims for himself in this case.

As noted by the *Branzburg* Court, it was in 1958 that a newsperson first asserted a First Amendment privilege against public disclosure of confidential information. *Branzburg, supra*, 408 U.S. at 685–86, 92 S.Ct. at 2659. In that case, *Garland v. Torre*, 259 F.2d 545 (2d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), the second circuit upheld a United States District Court's order compelling a reporter to disclose the name of her news source. The court reasoned that the asserted privilege must necessarily give way to the parties' respective constitutional rights to sue and defend in a situation in which (a) the judicial process was not being used to force a wholesale disclosure of news sources, (b) the identity of the source was of doubtful relevance, and (c) the questions asked of the reporter went to the heart of the plaintiff's claims. 259 F.2d at 549–50.

In the intervening years since *Garland v. Torre, supra,* was handed down, the federal courts have been faced with other cases of a similar nature. Courts have found no reporter's privilege in a grand jury context, *Branzburg v. Hayes, supra,* or which would permit a reporter to disobey a court order to disclose the identity of sources whose disclosures to the reporter violated a court order, *Farr v. Pitchess,* 522 F.2d 464 (9th Cir. 1975). In *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), the United States Supreme Court went so far as to hold that a party was entitled to enquire into the "state of mind" of those persons involved in the editorial process in a defamation case in which the newspersons were also parties.

■ On the other hand, the courts have also held that there is a qualified First Amendment privilege which requires that there must be a compelling need before the judicial process will require a reporter to divulge confidential news sources. *See Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 436–39 (10th Cir. 1977); *Baker v. F & F Investment,* 470 F.2d 778 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686; *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co., Inc.,* 455 F.Supp. 1197 (N.D.Ill.1978). The test to be applied is best set forth in *Silkwood v. Kerr-McGee Corp., supra.* In *Silkwood* the court, relying on *Garland v. Torre, supra,* set out a four part analysis to be undertaken in determining whether the court should order disclosure of a confidential news source. The court should consider:

1. Whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful.

2. Whether the information goes to the heart of the matter.

3. Whether the information is of certain relevance.

4. The type of controversy.

*Silkwood, supra,* 563 F.2d at 438.

■ Applying this analysis, it is clear from the record that plaintiff has attempted to determine Seper's news sources from all independent sources reasonably available or known to plaintiff. There appears to be no question that the information sought goes to the heart of plaintiff's complaint and is absolutely relevant to plaintiff's lawsuit, for without the information plaintiff cannot recover. The Internal Revenue Service agent, or agents, who revealed the information to Seper are not only civilly liable for their acts but may also be criminally liable, if found guilty of the alleged violations of the Internal Revenue Code. *See* 26 U.S.C. §§ 7213 and 7217.

In addition, as noted above, this is not a diversity case but a civil case based on federal statutes. It also appears that if the facts alleged by the parties are true and proven the witness himself might also be civilly and/or criminally liable for his part in publishing the alleged "return information." *See* 26 U.S.C. §§ 6103, 7213(a)(3), and 7217. To permit the witness to use the First Amendment as a shield under these circumstances would subvert the intent and purpose of the above cited statutes.

In this respect, this case is not unlike the situation in *Farr v. Pitchess, supra.* In that case a state trial court, in order to insure a fair trial in the widely publicized trial of Charles Manson, entered an order "prohibiting any attorney, court attache, or witness from releasing for public dissemination the contents or nature of proposed trial testimony or other evidence." 522 F.2d at 466. Information was leaked to the press and published. The reporter to whom the information was released was ordered by the state court to disclose the identity of the informant and, upon refusing to do so, was jailed for contempt. The Ninth Circuit Court of Appeals affirmed the district court's dismissal of the reporter's petition for writ of habeas corpus on the grounds that the First Amendment right asserted by the reporter was outweighed by the criminal defendant's right to a fair trial and the trial court's duty to protect that right. While the instant case is not a criminal prosecution, the criminal overtones and the nature of the right asserted are sufficient to outweigh Seper's First Amendment rights.

Furthermore, the cases relied upon by the witness, *i. e., Baker v. F & F Investment, supra,* and *Gulliver's Periodicals, Ltd., supra,* for the proposition that the Court should not impinge upon the news gathering process without a compelling reason are inapposite here. Those cases do not involve situations where criminal liability attached to the act of disseminating the information gleaned from the informant. Here the witness would have the Court recognize the First Amendment as a shield to disclosure of the identity of an informant who supplied information which neither the informant nor the witness had a legal right to publish. *See* 26 U.S.C. §§ 6103 and 7213. There is no First Amendment privilege to violate the law. Compelling the witness to reveal his source in the circumstances present here will in no way affect reporters' rights to "seek news from any source by means within the law." *Branzburg v. Hayes, supra,* 408 U.S. at 681–82, 92 S.Ct. at 2657.

Finally, it should be noted that the motion to compel in the instant case does not constitute a "fishing expedition" which would rule out compulsory disclosure of Seper's source(s). *See Silkwood v. Kerr-McGee Corp., supra,* 563 F.2d at 438. Seper has admitted that he obtained his information from an IRS agent, and stated as much in his articles. Thus, plaintiff does not seek to probe Seper's mind and relationships with sources for evidence which may or may not help its case but, rather, seeks evidence which is crucial to its case and which Seper has admitted possessing. In addition, the order set out below only compels Seper to answer those questions directly related to the persons who revealed "return information" in violation of the Internal Revenue Code, and the information revealed.

In accordance with the foregoing opinion,

IT IS ORDERED that upon renewal of the taking of his deposition Jerry Seper shall answer the questions propounded by plaintiff regarding the source(s) of the "return information" disclosed under his byline and other "return information" revealed to him regarding plaintiff.

IT IS FURTHER ORDERED that each party to this motion shall bear its own costs and attorneys' fees.

## ON MOTION FOR RECONSIDERATION

This cause is before the Court on motion to reconsider. The facts are developed in this Court's Opinion and Order of July 18, 1980.

### BACKGROUND

Plaintiff's Second Amended Complaint was filed on April 21, 1980, pursuant to 26 U.S.C. § 7217. The Complaint alleges that the Internal Revenue Service acquired "return information" within the meaning of 26 U.S.C. § 6103(b)(2) during an official examination of Plaintiff's income tax returns; that this information was disclosed to Jerry Seper, a newspaper reporter not a defendant in this case, by an unnamed agent for the Internal Revenue Service; and that said disclosure was in violation of 26 U.S.C. § 6103(a).

The present dispute involves Plaintiff's attempts to discover the identity of the agent that disclosed the above information. Seper acknowledges that he obtained information concerning the Plaintiff's tax returns from an agent of the Internal Revenue Service. At the deposition, however, Seper refused to reveal his sources and the agent's identity. Seper maintained that this subject of inquiry was covered by a newsman's privilege, and that to compel disclosure would violate the First Amendment.

In its Opinion and Order of July 18, 1980, this Court rejected Seper's contentions and ordered him to answer the questions propounded by Plaintiff concerning the source of his information and the agent's identity. Although the Court recognized the existence of a "qualified" First Amendment privilege the Court held that the privilege can be overcome by demonstrating a "compelling need" for disclosure.

The Court adopted the four–part balancing test set forth in *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 438 (10th Cir.

1977)[1] and held that Plaintiff had met his burden in all respects. In the course of its analysis, the Court emphasized that if the facts alleged by Plaintiff were true, criminal liability might well attach to the disclosure of Plaintiff's "return information." *See* 26 U.S.C. § 7213(a)(3). It was on this basis, among others, that the Court distinguished the cases relied on by Seper. *See e. g., Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972). This Court stated:

> Here the witness would have the Court recognize the First Amendment as a shield to disclosure of the identity of an informant who supplied information which neither the informant nor the witness had a legal right to publish. *See* 26 U.S.C. §§ 6103 and 7213. There is no First Amendment privilege to violate the law. Compelling the witness to reveal his source in the circumstances present here will in no way affect reporters' rights to "seek news from any source by means within the law." *Branzburg v. Hayes, supra*, 408 U.S. at 681–82, 92 S.Ct. at 2657.

## *MOTION FOR RECONSIDERATION*

Seper's Motion for Reconsideration criticizes the Court's Opinion and Order of July 18, 1980, on two grounds.[2]

First, Seper challenges the Court's reliance on 26 U.S.C. § 7213, the criminal counterpart of 26 U.S.C. § 7217, for the reason that there has been no judicial determination that § 7213 was in fact violated. More specifically, Seper argues that the Court has not found that the disclosures by the John Doe Defendant constituted "return information" under § 6103 or that the disclosures were "voluntarily and intentionally released," as required by the criminal statute.

Second, Seper challenges the Court's reliance on language in *Farr v. Pitchess*, 522 F.2d 464 (9th Cir. 1975) and *Garland v. Torre*, 259 F.2d 545 (2d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), on the basis that the former was a contempt case against a reporter who published information in violation of an order that was intended to insure a criminal defendant's right to a fair trial, and the latter involved a libel action which had been frustrated because the defendant claimed its sources to be confidential. Seper emphasizes that the present cause is civil, and that the Plaintiff is seeking information from a non–party witness–a witness against whom Plaintiff admits he does not have a cause of action.[3]

In order to understand why Seper's contentions must fail, it is necessary to examine the legislative history of 26 U.S.C. §§ 6103, 7213, and 7217 in light of the Supreme Court's decision in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

## *BRANZBURG*

In *Branzburg v. Hayes, supra*, the Supreme Court granted certiorari to review the judgments of three circuit courts, all of which involved the power of a grand jury to compel a reporter to disclose information

---

**1.** The *Silkwood* test lists four factors:
1. Whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful.
2. Whether the information goes to the heart of the matter.
3. Whether the information is of certain relevance.
4. The type of controversy.
*Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977).

**2.** Seper's reply alleges, for the first time, that Plaintiff is not entitled to the protection of § 7217 for the reason that Plaintiff is a corporation and not a private individual. This argument is refuted by 26 U.S.C. § 7701, which states: "Person.–The term 'person' shall be construed to mean and include ... corporation."

**3.** Plaintiff's Response to Motion for Reconsideration, filed August 7, 1980, states: "section 7217 does not appear to provide a private remedy against a person who obtains the information without authority in the first instance and then publishes it. That conduct is made a crime by section 7213(a)(3), but it does not seem to have been made privately actionable by section 7217. There would thus appear to be no basis for making Mr. Seper himself a party defendant in this action." At 4.

concerning criminal activity about which the reporter had written. In each case, the newsman had refused to testify on the basis that he was protected by a "newsman's privilege"–a privilege with its roots in the First Amendment. The Court recognized that the

> heart of the claim is that the burden on news gathering resulting from compelling reporters to disclose confidential information outweighs any public interest in obtaining the information.

*Id.* at 681, 92 S.Ct. at 2656.

Analyzing the "burden on news gathering" that would occur by disallowing a newsman's privilege, the *Branzburg* Court made the following pertinent observations:

(1) "These cases involve no intrusions upon speech or assembly, no prior restraint or restriction on what the press may publish, and no express or implied command that the press publish what it prefers to withhold," *id.* at 681, 92 S.Ct. at 2656–57, and "the use of confidential sources by the press is not forbidden or restricted; reporters remain free to seek news from any source by means within the law." *Id.*

(2) "The prevailing view is that the press is not free to publish with impunity everything and anything it desires to publish." *Id.* at 682, 92 S.Ct. at 2658.

(3) "The preference for anonymity of those confidential informants involved in actual criminal conduct is presumably a product of their desire to escape criminal prosecution, and this preference, while understandable, is hardly deserving of constitutional protection." *Id.* at 691, 92 S.Ct. at 2662.

Finally, the Court noted that "estimates of the inhibiting effect of such subpoenas on the willingness of informants to make disclosures to newsmen are widely divergent and to a great extent speculative," *id.* at 693–94, 92 S.Ct. at 2663, and that "the evidence fails to demonstrate that there would be a significant constriction of the flow of news to the public if this Court reaffirms the prior common–law and constitutional rule regarding the testimonial obligations of newsmen." *Id.*

Against these observations, the Court examined the "public interest in obtaining the information." *Id.* at 681, 92 S.Ct. at 2656. Not only did *Branzburg* recognize the public's constitutionally–based right to an effective grand jury, but it recognized a broader public right–the right to be protected from violations of criminal law. The Court observed that "fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government. . . ." *Id.* at 690, 92 S.Ct. at 2661. Moreover, the First Amendment

> does not reach so far as to override the interest of the public in ensuring that neither reporter nor source is invading the rights of other citizens through reprehensible conduct forbidden to all other citizens.

*Id.* at 691–92, 92 S.Ct. at 2662. The Court reasoned that "the crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not," *id.*, and concluded that

> we cannot seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it.

*Id. See also id.* at 696–97, 92 S.Ct. at 2664.

### LEGISLATIVE HISTORY AND PURPOSE OF SECTION 7217

■ This Court is aware that it is not addressing the newsman's privilege in the context of a criminal investigation. This fact alone, however, does not render the observations in *Branzburg* irrelevant. A reading of the language and history of §§ 7217, 7213, and 6103, makes it clear that Congress intended to do more with § 7217 than create a private cause of action; Congress intended to facilitate enforcement of the criminal law of the United States.

Section 6103 establishes the general rule that return information is confidential and

should not be disclosed. Section 7213 provides felony sanctions for disclosure in violation of § 6103, and for publication of the information disclosed. Section 7217, the statute under which Plaintiff sues, adds a civil cause of action in favor of the injured taxpayer against "any person who knowingly, or by reason of negligence, discloses return information in violation of § 6103."

House Report No. 94–658 to the Tax Reform Act of 1976 suggests that in passing § 6103, Congress was motivated by a desire to protect the public's right to an effective tax system:

> Questions have been raised and substantial controversy created as to whether the present extent of actual and potential disclosure of return and return information to other Federal and State agencies for nontax purposes breaches a reasonable expectation of privacy on the part of the American citizen with respect to such information. This, in turn, has raised the question of whether the public's reaction to this possible abuse of privacy would seriously impair the *effectiveness of our country's voluntary assessment system which is the mainstay of the Federal Tax System.*

[1976] U.S.Code Cong. & Ad.News 2897, 3747. (Emphasis added).

The statutory amendments effected by the Tax Reform Act of 1976 included raising the criminal penalty possible for unauthorized disclosure and creating § 7217, the civil section. Congress' purpose can be seen in the following passage:

> The committee decided that the present provisions designed to enforce the rules against the improper use or disclosure of returns and return information are inadequate. The committee decided that the criminal penalties for an authorized [sic] disclosure should be increased . . . . The committee also decided that, in order to redress any injury sustained *and to aid in the enforcement of the confidentiality rules,* a *civil* action for damages should be provided to any person injured by a willful or negligent disclosure in violation of the amendment.

House Report No. 94–658, [1976] U.S.Code Cong. & Ad.News 2897, 3777. (Emphasis added).

*ANALYSIS*

■ Seper's Motion for Reconsideration does not contest that the information disclosed by the John Doe Defendant was "return information," as alleged in Plaintiff's Complaint. Nor does Seper allege that this information was not disclosed "voluntarily and intentionally." Seper simply points out that there has been no judicial determination of these facts. From this he argues that the Court must ignore the potential violation of § 7213, and its effects on the availability of the newsman's privilege.

Seper's argument must be put into perspective. At this point, Seper is the only available person who can supply the information which Seper says the Court must obtain before it can recognize the effect of § 7213 on First Amendment analysis. The Court can understand Seper's reluctance to testify. If the John Doe Defendant is in violation of § 7213, Seper himself may be guilty of a felony. *See Branzburg v. Hayes, supra* at 696–97, 92 S.Ct. at 2664. In this event, however, Seper could protect himself by taking the Fifth Amendment.

In *Branzburg v. Hayes, supra,* the Supreme Court rejected the reporters' claims . "that preliminary to requiring their grand jury appearance, the State must show that a *crime has been committed* and that they possess relevant information not available from other sources, for only the grand jury itself can make this determination." 408 U.S. at 701, 92 S.Ct. at 2666. (Emphasis added). *Cf. Zurcher v. Stanford Daily,* 436 U.S. 547, 567, 98 S.Ct. 1970, 1982, 56 L.Ed.2d 525 (1978), in which the Supreme Court rejected the argument that the First Amendment protected a newspaper's files from warrants issued in compliance with the Fourth Amendment:

> Nor are we convinced, any more than we were in *Branzburg v. Hayes* . . . that confidential ' sources will disappear and

that the press will suppress news because of fears of warranted searches.

*Id.*

This Court finds the reasoning of *Branzburg* and *Zurcher* persuasive. The statute under which Plaintiff sues was intended to promote the public's right to a successful tax system; it was intended as a supplement to the criminal law of the United States. Seper should not be able to frustrate the foregoing right by stressing the civil nature of § 7217, for to do so would diminish the public protection that Congress intended.

*CONCLUSION*

*Branzburg* identified three factors which much be examined to determine whether the First Amendment prohibits the testimony sought by Plaintiff. The Court must ascertain the burden on news gathering that would result from compelling the reporter to disclose confidential information. Against this, it must weigh any public interest in obtaining the information. Of relevance to this analysis is a third factor–the nature of the information the reporter seeks to protect.

This Court recognizes that disallowing the newsman's privilege in civil litigation burdens news gathering to a greater extent than if the rule were limited to criminal proceedings. *See Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979); *Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972). As the Court has emphasized, however, this action, though civil in nature, is brought pursuant to a statute that was intended to enforce the same policy embodied in § 7213, the criminal statute. While the observations in *Branzburg* regarding the burden on news gathering might apply to a lesser extent in an action of this nature, this Court finds them relevant.

Similar reasoning applies to the Court's examination of the second factor–the public interest in obtaining Seper's sources. By enacting § 7213, Congress expressed its concern that the public right they were intending to protect, the right to a successful voluntary tax system, could not be sufficiently protected by the criminal law. Each taxpayer must know that all violations of the confidentiality rule in § 6103 can be vindicated–not just those which the government sees fit to prosecute. By permitting the media to protect the identity of potential violaters, this Court would be diminishing the public confidence that Congress felt was necessary to the voluntary tax system. Plaintiff's private interest in discovering who breached his confidence is therefore hopelessly intertwined with the public interest. The taxpayers have a right to expect that the confidentiality of their income tax returns will be respected.

The final, and very important, factor recognized by the *Branzburg* Court is the nature of the information the reporter seeks to protect. In this regard, *Branzburg* and the present case are nearly identical. Embodied in §§ 7213 and 7217 are public declarations that (1) newsmen have no right to discover return information and (2) the public has no right to have it printed. As stated in *Branzburg*:

> The preference for anonymity of those confidential informants involved in actual criminal conduct is presumably a product of their desire to escape criminal prosecution, and this preference, while understandable, is hardly deserving of constitutional protection.

408 U.S. at 691, 92 S.Ct. at 2662. The Supreme Court concluded that it must reject "the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof . . . ." *Id.* at 692, 92 S.Ct. at 2662.

The purpose of the newsman's privilege is to insure a healthy flow of information to the media. When the information being received is that to which the public has a right, the value of a newsman's privilege is arguable. Here, however, the press has collected information to which the public, by virtue of the statutes referred to, may not have a right. In such instances, the burden on legitimate First Amendment activity by failing to protect the communication is reduced.

The present case is not greatly different from the Ninth Circuit decision in *Farr v. Pitchess*, 522 F.2d 464 (9th Cir. 1975), in which the court held that:

> The application of the *Branzburg* holding to non–grand jury cases seems to require that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest.

*Id.* at 468.

For the reasons stated above, the paramount interest lies in favor of disclosure.

Therefore,

IT IS ORDERED that Seper's Motion to Reconsider is denied, and that, therefore, the Court's previous Order to which the Motion to Reconsider was directed shall stand, and Seper is directed to comply with the previous Order.