William Lee WRIGHT, et al., Plaintiffs,

v.

The FRED HUTCHINSON CANCER RESEARCH CENTER, et al., Defendants.

No. C01–5217L.

United States District Court,
W.D. Washington,
at Seattle.

April 2, 2002.

Bruce E.H. Johnson and Jeffrey L. Fisher, Davis Wright Tremaine LLP, Seattle, WA, for Seattle Times Company.

David E. Breskin, Daniel F. Johnson, Short Cressman & Burgess PLLC, Thomas R. Dreiling, Law Office of Thomas R. Dreiling, Seattle, WA, and Alan C. Milstein, Sherman, Silverstein, Kohl, Rose & Podolsky, Pennsauken, NJ, for Plaintiffs.

William J. Leedom, Michael Madden, David B. Robbins, Bennett Bigelow & Leedom, P.S., Seattle, WA, Joseph M. Hassett, Barbara F. Mishkin, George H. Mernick, III, and Jonathan S. Franklin, Hogan & Hartson L.L.P., Washington, DC, for Fred Hutchinson Cancer Research Center.

## ORDER DENYING DEFENDANTS' MOTION TO COMPEL PRODUCTION FROM THE *SEATTLE TIMES*

LASNIK, District Judge.

This matter comes before the Court on the "Hutchinson Defendants' Motion to Compel Production of Documents by the *Seattle Times*." Defendants seek copies of any and all communications between the *Seattle Times* and the plaintiffs in the above-captioned litigation.

▮ In federal court, a non-party ordinarily can be compelled to produce evidence regarding any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The liberal discovery rules are based on the principle that access to all relevant facts will promote the search for truth and the integrity and fairness of the judicial process. When a litigant seeks to compel production of information and documents acquired by a journalist in the course of gathering news, however, "society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993) ("*Shoen I*") (internal quotations and citations omitted). The journalist's privilege against compelled disclosure is a First Amendment shield in all judicial proceedings (*Farr v. Pitchess*, 522 F.2d 464, (9th Cir.1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976)), but it is not absolute. If the circumstances of the case show that the privilege applies, the Court must then determine whether, in light of the competing needs and interests of society and the opposing parties, the privilege has been overcome. *Shoen I*, 5 F.3d at 1292–93.

### A. APPLICABILITY OF JOURNALIST'S PRIVILEGE

It is undisputed that Duff Wilson, the reporter who wrote the "Uninformed Consent" series, began investigating Protocol 126 and the resulting clinical trials in order to disseminate information to the public. Defendants argue, however, that he overstepped the bounds of journalism when he took it upon himself to provide information and advice to the plaintiffs in this case, thereby losing any protections to which he may otherwise have been entitled under the journalist's privilege.

▮ A person may invoke the journalist's privilege against compelled disclosure if he or she is gathering news for dissemination to the public. *Shoen I*, 5 F.3d at 1293. The test, as applied in the Ninth Circuit, is whether the person seeking to invoke the privilege had "the intent to use material—sought, gathered or received—to disseminate information to the public and [whether] such intent existed at the inception of the news-

gathering process." *Shoen I,* 5 F.3d at 1293–94 (quoting *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2nd Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987)). Defendants have not challenged Mr. Wilson's testimony that he began investigating the practices and policies of the Fred Hutchinson Cancer Research Center for the purpose of facilitating newsgathering and with the intention of writing an article for the *Seattle Times.* Neither of those purposes has changed in the intervening years. Mr. Wilson continues to investigate Protocol 126 and the Research Center's activities, and has written or contributed to nineteen articles in addition to the initial five-part series.

 Defendants have offered no support for their theory that, despite the fact that Mr. Wilson's activities fall squarely within the Ninth Circuit test for identifying individuals who benefit from the journalist's privilege, his sharing of information with the plaintiffs in this action abrogates whatever protections such a privilege might have afforded.[1] Defendants have not accused Mr. Wilson of any illegal activities, asserted that he was being paid by plaintiffs, or shown that he was otherwise motivated to investigate defendants for non-journalistic purposes. At most, defendants imply that Mr. Wilson has a bias in favor of plaintiffs which prompted him to assist plaintiffs at the expense of an even-handed treatment of the issues. Even if the Court assumes a bias in this case, defendants have not cited, and the Court has not found, any First Amendment authority that requires journalists to refrain from drawing conclusions or holding opinions about the subjects on which they are reporting as a prerequisite to protection from compelled disclosure.[2] Moreover, it is not at all surprising that an investigative reporter who wants information might introduce himself to a potential source by explaining the topic and scope of his research and sharing his theories. In the context of this investigation, Mr. Wilson needed to establish some credibility with plaintiffs if he hoped to obtain authorization to review their decedents' medical records: a full disclosure of the information within his possession and an agreement to share any information he later discovered could reasonably assist in these endeavors and are in no way inimical to his purpose of newsgathering for public dissemination.

## B. BALANCE OF INTERESTS

The Court is charged with the obligation of weighing the First Amendment interests which give rise to the journalist's privilege against the opposing need for disclosure in order "to determine where lies the paramount interest." *Shoen I,* 5 F.3d at 1292–93 (quoting *Farr,* 522 F.2d at 468). As part of the "backdrop" for this determination, the Court recognizes "that routine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process." *Shoen v. Shoen,* 48 F.3d 412 (9th Cir.1995) ("*Shoen II*"). The journalist's First Amendment interests in avoiding compelled disclosure include: "[t]he threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and preserve non-broadcast material; ... the burden on journalists' time and resources in responding to subpoenas;" and the possibility that frequent court-compelled disclosure will encourage the destruction of research material soon after publication. *Shoen I,* 5 F.3d at 1294–95; *Shoen II,* 48 F.3d at 416. Because protection for journalists furthers the public's interest in a free and useful press, "in the ordinary case the

---

**1.** The cases cited by defendants on this issue involve the language and interpretation of state statutes, not the First Amendment.

**2.** The breadth of the protection afforded by the First Amendment belies defendants' argument. At its root, the First Amendment protects the communication of ideas and thoughts that, even if not shared by the majority, need to be part of the civil discourse in order to allow the citizenry to make an informed decision on a particular issue. The First Amendment does not favor "objective" reporting, nor is it limited to statements which contain only proven facts. The opinionated, one-sided, and issue-oriented writings found in the Federalist Papers, abolitionist newspapers, and communist dailies are all entitled to First Amendment protections, regardless of the bias of the authors.

civil litigant's interest in disclosure should yield to the journalist's privilege. Indeed, if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished." *Shoen II*, 48 F.3d at 416 (quoting *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C.Cir.1981)).

■ The Ninth Circuit has determined that, where the information sought from a journalist was not gathered or kept in confidence, the party seeking discovery must show "that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen II*, 48 F.3d at 416. Defendants have not satisfied their burden.

### 1. Alternative Sources

Defendants seek copies of correspondence between the *Seattle Times* and the plaintiffs in this case. They have not, however, sought to depose plaintiffs regarding these communications and have therefore not exhausted all reasonable alternative sources. While the Court recognizes that plaintiffs' testimony about what they learned from Mr. Wilson and when they learned it may not be as detailed as the underlying correspondence, the statute of limitations defense is often established through testimony and, when such testimony is combined with the documents already produced by plaintiffs Wright, Ridings, and Chambers, defendants may have no further need for discovery from the *Times*. As was the case in *Shoen I*, the fact that plaintiffs' responses to written discovery were less than satisfactory does not relieve defendants of their obligation to at least attempt to obtain the information through other avenues, such as depositions and/or motions to compel.

### 2. Cumulative

Defendants acknowledge that, to the extent their discovery requests seek copies of documents that were already provided by plaintiffs, the requests are cumulative. Until defendants have exhausted the other potential sources for this information, it is impossible to evaluate the need for any additional discovery from the *Seattle Times*.

### 3. Relevance

■ In order to overcome a claim of journalist's privilege, the party seeking discovery bears a far heavier burden in establishing relevance than is applicable in the normal discovery context. Pursuant to *Shoen II*, the party seeking to compel disclosure must show "actual relevance; a showing of potential relevance will not suffice." 48 F.3d at 416. Even if the information sought "may well contain" evidence relevant to a claim, if the evidence would not, without more, establish the claim, actual relevance does not exist. *Shoen II*, 48 F.3d at 417 (although statements to the press in 1991 may tend to show the speaker had ill will toward the subjects in 1990, such statements could not, without more, establish actual malice/libel and were not discoverable).

Because defendants have not satisfied the exhaustion requirement, the Court need not determine "whether the information sought is relevant, material, and non-cumulative, and whether it is crucial to the maintenance of [defendants'] legal claims." *Shoen I*, 5 F.3d at 1296 n. 14. If defendants fully exhaust the other potential sources of this information and are able to show that additional production from the *Seattle Times* would not be cumulative, the Court will then consider the relevance of the information sought.

### C. PROTECTIVE ORDER AND SANCTIONS

In its opposition papers, the *Seattle Times* requests that the Court enter a protective order precluding defendants from seeking further discovery from the *Times* and awarding its reasonable expenses in opposing defendants' motion to compel. Although defendants objected to the entry of a protective order, they have failed to respond to the request for expenses.

As discussed above, it is premature to decide whether defendants may be able to make the necessary showing to obtain some limited discovery from the *Times*. A protective order precluding all future efforts in that regard is, therefore, inappropriate. Having reviewed the papers submitted by the parties

and the cases cited, however, the Court has concerns regarding the propriety of defendants' motion in light of the obvious failure to exhaust other discovery options. The motion and the subpoena that preceded it were, in this context, coercive insofar as they could be expected to have appreciable adverse impacts on the *Times* and its reporters. As recognized by the Ninth Circuit:

> To the extent that compelled disclosure becomes commonplace, it seems likely that internal policies of destruction of materials may be devised and choices as to subject matter made, which could be keyed to avoiding disclosure requests or compliance therewith rather than to the basic function of providing news and comment. In addition, frequency of subpoenas would not only preempt the otherwise productive time of journalists and other employees but measurably increase expenditures for legal fees.

*Shoen I*, 5 F.3d at 1295 (quoting *United States v. La Rouche Campaign*, 841 F.2d 1176, 1182 (1st Cir.1988)). Even though production has not been compelled, defendants' motion imposed a burden on the *Seattle Times* with very little legal justification.

If a motion to compel discovery is denied, the Court may, "after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." The *Times* may, within five days from the date of this Order, submit a statement of reasonable expenses incurred in opposing this motion. Costs associated with complying with Rule 37(a)(2)(A), which would have been incurred even if the motion had not been filed, should not be included in this statement. Defendants may file and serve any opposition to the award of fees and/or the amount of expenses on or before April 18, 2002.

For all of the foregoing reasons, defendants' motion to compel is DENIED. The Clerk of Court is directed to place the *Seattle Times'* request for expenses on the Court's calendar for Friday, April 19, 2002.