Karen G. SILKWOOD, by the Administrator of her Estate, William M. Silkwood, etc., et al., Plaintiffs,

v.

The KERR–McGEE CORPORATION etc., et al., Defendants-Appellees,

Arthur Buzz Hirsch, Non-Party Witness-Appellant.

No. 77–1287.

United States Court of Appeals, Tenth Circuit.

Submitted July 20, 1977.

Decided Sept. 23, 1977.

**434**

William G. Paul, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl. (L. E. Stringer and John J. Griffin, Jr., of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, and Derrill Cody, Kerr-McGee Corp., Oklahoma City, Okl., on the brief), for defendants-appellees.

Stephen F. Rohde, of Fleishman, Brown, Weston & Rohde, Beverly Hills, Cal. (Judith Jecmen, of Rudich & Wideman, Los Angeles, Cal., of counsel, on the brief), for non-party witness-appellant.

Paul P. Selvin, of Selvin & Weiner, Los Angeles, Cal., for Writers Guild of America, West, Inc., amicus curiae.

Barbara Scott, New York City, for Motion Picture Assn. of America, Inc., amicus curiae.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

WILLIAM E. DOYLE, Circuit Judge.

The appellant herein is a non-party witness in an action which is pending in the United States District Court for the Western District of Oklahoma. He conducted an investigation into the death of Karen Silkwood as groundwork for the making of a documentary film. As part of pretrial discovery, defendant-appellee Kerr-McGee Corporation gave notice of the taking of his deposition and simultaneously served on him a subpoena Duces Tecum to produce all documents and writings in connection with his investigation. The trial court after considerable proceedings denied protective relief to Hirsch. It ordered him to produce and to answer questions which probed information acquired by him and which he claimed to have been given to him in confidence.

A deposition was taken on April 13–14, 1977, but Hirsch then refused to answer questions which called for disclosure of confidential information. He did, however, respond to questions which sought information as to his previous experience as a journalist and film maker and other matters which he did not regard as confidential.

The embattled issue is, therefore, whether the witness Hirsch is entitled to legal protection against revealing information obtained by him in the course of making a factual investigation of events surrounding the death of the decedent herein, Karen G. Silkwood, which investigation looked to the making of a documentary film depicting the events before and after.

The principal action here was filed on November 5, 1976 in the Western District of Oklahoma by the administrator of the estate of Karen Silkwood and also by the representatives of other survivors of Karen Silkwood.

In general, the claims are those which are alleged to have accrued during her lifetime and which survived her death. It is charged that Kerr-McGee Corporation and certain of its agents, some of which were identified and others not, violated her constitutional rights by conspiring to prevent her from organizing a labor union, by conspiring to prevent her from filing com-

* Of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

plaints against Kerr-McGee under the Atomic Energy Act and by willfully and wantonly contaminating her with toxic plutonium radiation.

According to the limited facts in the record, Hirsch had been a free-lance reporter who had, in 1969–70, written articles for various newspapers concerning the Chicago Seven trial. Later he had enrolled as a student in the film department of UCLA. There, he learned of Karen Silkwood's death. Through one Larry Cano, an instructor in the film department at UCLA, he undertook together with Cano to produce a factual motion picture account of Karen Silkwood's life and the incidents which attended her death. This investigation was commenced in March 1975, and in July 1976, he, Cano and one Carlos Anderson, who was also a student in the film department at UCLA, agreed to form a production company for the purpose of making a film having to do with Karen Silkwood.

In an affidavit which is in the record, Hirsch stated that he assured all of the witnesses whom he interviewed that he was working for a production company in an effort to make a factually accurate film. He assured the interviewees, who demanded confidentiality, that the information would be kept confidential. He also assured those interviewees who requested that their identities be not revealed that he would respect their requests.

Kerr-McGee's position on this appeal is that they sought first to get facts concerning the basis for this lawsuit from the representative plaintiffs, but were unsuccessful. These witnesses referred the lawyers for Kerr-McGee to the attorneys for the plaintiffs. One Drew Stephens, allegedly a person who was close to the decedent, was also deposed. The allegation is that the information given by him was meager and that he claimed to have delivered his information to Hirsch.

To date it does not appear that Kerr-McGee has sought to obtain information from persons other than those mentioned. The deposition in question was scheduled for March 10, 1977 and was first postponed until March 29. It was then that Hirsch moved to quash the subpoena Duces Tecum or to transfer his deposition to the Central District of California. The motion and the alternative motion were both denied on March 28. Thereafter, Hirsch filed a motion for protective order and to stay deposition together with the production of documents pending a final determination of the motion for protective order. The deposition was postponed to April 13, 1977, at which time the motion for protective order, etc. was denied.

On April 13–14, the deposition was taken, and on that occasion Hirsch invoked his First Amendment privilege on each and every question calling for disclosure of information which he deemed confidential. He answered all other questions.

The trial court's decision denying the motion for protective order assigned as its primary ground that the motion was not timely filed. It went on to hold, however, that even if it had been timely filed, it would have been denied because of lack of merit. The judge conceded that it was not possible for him to conclude as a matter of law that there is no possibility that the information sought might be relevant and that Hirsch could not have prevailed even if his motion had been timely. A footnote in the court's opinion stated that there was no absolute privilege against revelation of news sources or the disclosure of confidential information, citing *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). He conceded that arguably there is a qualified privilege in the process of developing. In considering the case the court did not balance the opposing considerations nor did it give any consideration to the existence of a qualified privilege.

Our inquiry goes to whether a privilege exists in favor of a non-party witness which permits him to resist pretrial discovery in order to protect a confidential source of information.

Secondly, whether, assuming that such a privilege does exist, it applies to a person in the position of Hirsch.

Third, if Hirsch has a privilege, how should the trial court proceed.

## I.

### WHETHER THE COURT CORRECTLY RULED THAT APPELLANT WAS PRECLUDED FROM FILING A MOTION FOR PROTECTIVE ORDER BY REASON OF NOT HAVING FILED IT IN CONNECTION WITH THE FIRST MOTION TO TRANSFER THE CAUSE TO CALIFORNIA, CENTRAL DISTRICT

■ Our conclusion is that this was error. Unquestionably, it is desirable that all motions which are going to be filed be filed at the same time and undoubtedly the rules contemplate this. However, in this instance there were justifications for not doing so. Thus, when one seeks to transfer a case, it is the natural course of things to withhold the motion which goes to the merits of the issue until the transfer motion is determined. For this reason alone, the court's ruling appears to be improper. Added to this is the fact that the protective order particularly was seeking to protect a constitutional right and was a substantial question. Perhaps the trial court did not so regard it. The claimed violation of the First Amendment to the Constitution demanded some evaluation of the merits rather than disposing of it on the ground that it was not filed with the motion to quash the subpoena Duces Tecum and the motion to transfer the cause to California. Hirsch could well have considered that it would have been a waiver of his motions to transfer or to quash if he had filed a motion for protective order at that time.

The trial court ruled on the first motions on March 28, 1977, though notice was received by telephone from Hirsch's counsel on Friday, March 25, 1977, that a motion for protective order was going to be filed. It was filed on March 28, the next court day after the notification. The deposition which had been scheduled for March 29 was continued in order to give Kerr-McGee an opportunity to file a brief.

■ Undoubtedly, the trial court has broad discretion in the area of discovery motions, but such an order in this area is reversible nevertheless where an abuse of discretion is shown. Considering the importance of the question presented by the motion for protective order in relationship to the lack of magnitude of the problem of failure to file simultaneous motions, it seems to us plain that the trial court should have received the motion and considered it out of time.

## II.

### SHOULD THE COURT HAVE RECOGNIZED THE EXISTENCE OF A PRIVILEGE APPLICABLE TO MEDIA REPORTERS UNDER THE FIRST AMENDMENT?

The request by Hirsch that he be protected from compulsory submission of documents and compulsory testimony was denied out of hand, the court saying that the First Amendment right to gather and disseminate news affords no absolute privilege against the revelation of news sources or the disclosure of confidential information, citing *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). At the same time the court noted that *Branzburg* has been limited in its scope to criminal cases and that a qualified privilege is developing in civil actions. The court's conclusion was that Hirsch was not entitled to be considered a newsman because he did not regularly engage in obtaining, writing, reviewing, editing or otherwise preparing news.

■ We must consider, first, the question of the effect on the validity of the privilege where the reporter is not a regular newsman. Does this limit the scope and extent of the constitutional privilege? Our conclusion is that, under these facts at least, it does not. True, Hirsch is shown here to be a film maker rather than a newspaper man, although he has been in the past a freelance writer for newspapers. His mission in this case was to carry out investigative reporting for use in the preparation of a documentary film. He is shown to have spent considerable time and effort in obtaining facts and information of the subject

matter in this lawsuit, but it cannot be disputed that his intention, at least, was to make use of this in preparation of the film. It strikes us as somewhat anomalous that the appellee would argue that he is not a genuine reporter entitled to the privilege, implying a lack of ability, while at the same time they are making a major legal effort to get hold of his material. They must believe that it has promise for them in this lawsuit; otherwise, they would not be engaging in an effort of some magnitude in order to obtain Hirsch's work product.

The Supreme Court has not limited the privilege to newspaper reporting. It has in fact held that the press comprehends different kinds of publications which communicate to the public information and opinion. *Lovell v. City of Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1935), and other cases recognize the presence of an underlying public interest in this communication and particularly in maintaining it free in the public interest. There is as well the aspect in this case of appellee seeking to take personal advantage of Hirsch's efforts in obtaining his investigative work product. He, of course, has a legitimate interest in seeking to protect the fruits of his labor. For these reasons, we are not prepared to say that the fact that Hirsch is not a salaried newspaper reporter of itself acts to deprive him of the right to seek protective relief.

In determining the scope and extent of the privilege, the guiding light is the decision of the Supreme Court in *Branzburg, supra.* The actual problem in that case was whether a reporter was free to avoid altogether a grand jury subpoena. The Supreme Court in rejecting his claim required him to appear and testify before the grand jury, and ruled that the grand jury subpoena had to be obeyed. The actual decision of the Supreme Court is not surprising nor is it important in the solution of our problem. But the Court's discussion in both the majority opinion of Justice White and the concurring opinion of Justice Powell recognizing a privilege which protects information given in confidence to a reporter *is* important. The Court said that the First Amendment occupies a preferred position in the Bill of Rights. *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); and *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284, *reh. den.,* 404 U.S. 876, 92 S.Ct. 26, 30 L.Ed.2d 124 (1971). It was then careful to point out that any infringement of the First Amendment must be held to a minimum—that it is to be no more extensive than the necessities of the case. *In re Stolar,* 401 U.S. 23, 91 S.Ct. 713, 27 L.Ed.2d 657 (1971). The scope and breadth of the protection is fully discussed.[1]

The majority also makes clear that it is not requiring the press to publish its sources of information or indiscriminately to disclose them on request. From this discussion we infer that the present privilege is no longer in doubt. In holding that a reporter must respond to a subpoena, the Court is merely saying that he must appear and testify. He may, however, claim his privilege in relationship to particular questions which probe his sources.

### III.

### IN VIEW OF THE PRESENCE OF A FIRST AMENDMENT ISSUE, HOW SHOULD THE TRIAL COURT PROCEED?

The Second Circuit has dealt with a similar problem in recent times. The case is

---

1. This statement is as follows:

   We do not question the significance of free speech, press, or assembly to the country's welfare. Nor is it suggested that news gathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press could be eviscerated. But these cases involve no intrusions upon speech or assembly, no prior restraint or restriction on what the press may publish, and no express or implied command that the press publish what it prefers to withhold. No exaction or tax for the privilege of publishing, and no penalty, civil or criminal, related to the content of published material is at issue here. The use of confidential sources by the press is not forbidden or restricted; reporters remain free to seek news from any source by means within the law. No attempt is made to require the press to publish its sources of information or indiscriminately to disclose them on request. 408 U.S. at 681–82, 92 S.Ct. at 2656–57.

*Baker v. F & F Investment,* 470 F.2d 778 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973), which held that the First Amendment considerations outweighed the need for the information which was there sought. It upheld the district court's denial of discovery in a fully reasoned opinion by Judge Kaufman.

In an earlier case, *Garland v. Torre,* 259 F.2d 545 (2d Cir. 1958), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), the Second Circuit had ordered disclosure of identity of a news source in a libel action. The reasoning was that a paramount public interest was present. The important thing about the *Garland* case is, however, that it laid down criteria for solving a problem such as the present one:

1. Whether the party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful.

2. Whether the information goes to the heart of the matter.

3. Whether the information is of certain relevance.

4. The type of controversy.

From these criteria, it has to be concluded that compulsory disclosure in the course of a "fishing expedition" is ruled out in the First Amendment case.

*Baker* was more protective of rights under the First Amendment than *Garland.* It did apply the criteria contained in *Garland* and it emphasized that the type of civil action is significant, as is the movant's necessity for obtaining the information. It underlined, in addition, the relevance or irrelevance of the information saying that if it had questionable relevance, this weighed in favor of protection.

There are other decisions which clarify the problem and aid in its solution. *See* the decision of the Eighth Circuit in *Cervantes v. Time,* 464 F.2d 986 (8th Cir. 1972), which denied disclosure of a source of news in a defamation case where the demand for the information was vague and not shown to be consequential.

Significant also is the District of Columbia decision in *Carey v. Hume,* 160 U.S.App. D.C. 365, 492 F.2d 631 (1974), where the effort was to discover the source of information which was published by Jack Anderson. This was a case in which the action was brought by public figures. It sounded in libel and the District Court for the District of Columbia held that it had to weigh the need for testimony against the claim of the newsman that the public's right to know is impaired and also considered the fact that the purported testimony was that of eye witnesses who saw documents removed by the principals in the case, who later complained that there had been a burglary of documents. It is not surprising, then, that the D.C. court ruled that there had been no abuse of discretion in directing a newsman to reveal names of eye witnesses to the removal.

■ The weakness of our case is that there has been a failure to weigh the various factors which have been announced in the cases. Indeed it has been impossible to conduct any weighing process because the record does not disclose anything as to the nature of the evidence sought, as to the effort to obtain it from other sources, as to the necessity for appellee to have it, and as to its relevance, all of which are highly important criteria. In view of this lack of evidence in the record and the consequent failure to evaluate it, we are compelled to reverse the judgment and remand the case for further proceedings.

The trial court is empowered to compel the parties to catalog: in the case of appellee, the evidence that it is seeking to the extent of its knowledge plus a showing of its efforts to obtain the information from other sources; in the case of appellant, a description which does not reveal information which is claimed to be privileged of the various documents and a description of the witnesses interviewed sufficient to permit the court to carry out a weighing process in accordance with the decisions above decided. Once the parties have done their work, the trial court can come to grips with the merits.

Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.