

Decided June 14, 1988

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

JESUS P. MAFNAS,                      )   CIVIL ACTION NO. 88-332
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )        ORDER DENYING
                                      )   MOTION TO QUASH SUBPOENA
                                      )   AND FOR PROTECTIVE ORDER
FRANCISCO MATSUNAGA,                  )
                                      )
          Defendant.                  )
_____)

## FACTS

On January 20, 1988 Victoria King, a news reporter for the Pacific Daily News (PDN), conducted an interview with defendant, Francisco Matsunaga, following defendant's testimony before a grand jury.

On January 21, 1988 the PDN printed a story entitled "Witness testifies Mafnas paid off," written by Ms. King. In this article King reported that defendant "said he told the jury panel he was ordered by (plaintiff) Mafnas to pick up checks totaling about $11,000 from Surf Hotel Manager Adrian Johnston."

On April 13, 1988 plaintiff filed a complaint against defendant alleging defamation, intentional infliction of emotional distress, and invasion of privacy.

443

On June 1, 1988 plaintiff filed a subpoena seeking to compel the oral deposition of King. King then moved to quash this subpoena and for a protective order prohibiting her deposition from being taken.

Plaintiff has opposed King's motion.

## CASE POSTURE

This case does not present a situation in which plaintiff is seeking to compel the identity of any confidential informants. Rather, plaintiff seeks to discover the circumstances surrounding King's interview with defendant on January 20, 1988. Specifically, plaintiff wants to discover whether defendant indeed said that plaintiff was "paid off" as alleged in the article published in the PDN on January 21, 1988.

Plaintiff has already taken defendant's deposition and sought to ascertain what was said in the interview between King and defendant on January 20, 1988. However, defendant has refused to answer any questions regarding the substance of this interview invoking the protection of the Fifth Amendment against self incrimination.

Plaintiff now contends that the only way plaintiff can determine what was said by defendant in the January 20, 1988 interview with King is to depose King. King disputes plaintiff's contention claiming that plaintiff has not completely exhausted all other means available for obtaining the information sought since plaintiff has not challenged defendant's right to Fifth Amendment protection.

The court must now scrutinize King's claim of privilege as posed against plaintiff's discovery interests.

## FIRST AMENDMENT INTERESTS

The First Amendment occupies a preferred position in the Bill of Rights. Gooding v. Wilson, 405 U.S. 518, 523, 92 S.Ct. 1103, 1106 (1972). Any infringement of the First Amendment must be held to a minimum and be no more extensive than the case necessitates. In re Stolar, 401 U.S. 23, 26, 91 S.Ct. 713, 714 (1971). However, it is clear that the First Amendment does not invalidate every incidental burdening of the press. Branzburg v. Hayes, 408 U.S. 665, 683, 92 S.Ct. 2646, 2657 (1972).

Courts faced with requests for discovery of materials used in the preparation of journalistic reports must be aware of the possibility that the unlimited or unthinking allowance of such requests will impinge upon First Amendment rights. Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 595 (1st Cir. 1980).

It has long been recognized that the compulsory disclosure of a journalist's confidential sources of information may entail an abridgement of press freedom by imposing some limitation upon the availability of news. Garland v. Torre, 259 F.2d 545, 548 (2nd Cir.) cert. denied, 358 U.S. 910, 79 S.Ct. 237 (1958).

Thus courts have expressed great concern for protection of confidential sources or information. See, e.g.,

445

United States v. Burke, 700 F.2d 70 (2nd Cir. 1983); Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir. 1977). This is because disclosure of such confidential material would clearly jeopardize the ability of journalists to gather information and, therefore, have a chilling effect on speech. United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988). However, when there is no confidential source of information at stake, the identification of First Amendment interests is a more elusive task. Id.

In any case in which a party is seeking discovery or testimony from a non-party journalist and in order to establish a basis for a claim of First Amendment privilege to avoid such a request, the journalist must make a minimal prima facie showing that responding to discovery or testimonial requests will impinge on First Amendment interests. See, Continental Cablevision v. Storer Broadcasting, 583 F.Supp. 427, 436 (ED Mo. 1984). These interests include the need to preserve the confidentiality of sources, Branzburg v. Hayes, supra, at 707, 92 S.Ct. at 2669, and the possible adverse effects disclosure may have on the reporter's ability to gather news. Carey v. Home, 492 F.2d 631, 636 (D.C. Cir. 1974). The burden then shifts to the party seeking discovery to demonstrate the efforts made to obtain the information elsewhere and the extent to which the information is relevant. Continental Cablevision v. Storer Broadcasting, supra, 583 F.Supp. at 436.

In order to compel discovery from a non-party

446

journalist who has made a _prima **facie**_ showing that complying with such discovery will encroach upon his or her First Amendment rights the party seeking discovery must show that:

1.  The party seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful.

2.  The information sought goes to the heart of the matter.

3.  The information is of certain relevance.

4.  The type of controversy warrants disclosure.

See, _Silkwood v. Kerr-McGee Corp._, supra, 563 F.2d at 438.

As a threshold matter, the court should be satisfied that the claim of the party seeking discovery is not frivolous or merely a pretense for using discovery powers in a fishing expedition. _Bruno & Stillman v. Globe Newspapers Co._, supra, 633 F.2d at 597.

In considering these factors the court must engage in a balancing analysis that considers both the constitutional interests of a free press and the obligation of all citizens to give relevant testimony. _Branzburg v. Hayes_, supra, at 710, 92 S.Ct. at 2671. See, also, _Herbert v. Lando_, 441 U.S. 153, 99 S.Ct. 1635 (1979). The court will look to the facts on a case-by-case basis in the course of weighing the need for the testimony in question against the claims of the newsman that the public's right to know will be impaired. _Carey v. Home_, supra, 492 F.2d at 636.

447

## APPLICATION

In this case, King contends that because she is a reporter she is entitled to a presumption that plaintiff's subpoena will infringe upon her First Amendment guarantees protecting the freedom of the press. However, the court's inquiry as to whether King has made a _prima facie_ showing that responding to plaintiff's discovery request would impinge upon her First Amendment interests does not simply end with a determination that King is a member of the news media. In cases not involving attempts to force the disclosure of confidential sources or information, a non-party journalist from whom discovery is sought must at least articulate some reason why such discovery would interfere with or have adverse effects upon that journalist's future ability to gather news. In this instance, King has failed to allege or show in any way the possibility that her ability to gather news will be adversely effected by having her deposition taken.

Her declaration filed in support of the motion to quash the subpoena states that she did interview Matsunaga but nothing more, of substance or germane to the motion, is set forth. There is not any assertion that her ability to gather news will be impinged because her deposition may be taken.

It is concluded that since there is no question of confidentiality and the interview resulted in an article published for all to read, King has failed to make a _prima facie_ showing of privilege.

**448**

Even if it can be said that King has made this minimal showing, it is clear that the privilege still does not pertain in this case. By applying the four factors set forth in Silkwood v. Kerr-McGee, supra, 563 F.2d at 438, plaintiff must first show that he endeavored to obtain the information sought from King elsewhere and was unsuccessful. Here, plaintiff seeks to determine what defendant actually said to King since the two paragraphs in King's January 21, 1988 news article which are the center of this controversy merely paraphrased defendant rather than quoting him directly.

Plaintiff has asserted that he has sought to determine the contents of defendant's interview with King by the most direct method available, that is, the taking of defendant's deposition. However, at that deposition, whenever defendant was asked any questions pertaining to his January 20, 1988 conversation with King, he invoked the protection of the Fifth Amendment. Thus, plaintiff contends that he has sought to procure the desired information regarding defendant's comments to King and has been unsuccessful. Since King is the only other person known to have been privy to this conversation, there is no way to discover the contents of this conversation without taking King's deposition.

King opposes plaintiff's contention that he had been unsuccessful in obtaining the desired information from defendant, asserting that plaintiff must now seek a court order compelling defendant to answer plaintiff's questions regarding

**449**

the contents of defendant's conversation with King. King maintains that such an order is likely to be granted since defendant's disclosure of his testimony before a grand jury does not provide a basis for any criminal charge, citing, In Re Grand Jury Investigation, 610 F.2d 202, 217 (5th Cir. 1980) and William Iselin & Co., Inc. v. Ideal Carpets, Inc., 510 F.Supp. 343, 345 (N.S. Ga. 1980).

However, King appears to have misconstrued the basis of defendant's Fifth Amendment claim. A thorough reading of defendant's deposition reveals that defendant refused to answer plaintiff's questions due to the possibility that defendant might incriminate himself with regard to any criminal charges that might be filed against him concerning his alleged participation in a bribery scheme.

The privilege against self-incrimination is to be accorded liberal construction. Spevack v. Klein, 385 U.S. 571, 87 S.Ct. 625 (1967). The manifest purpose of Fifth Amendment provisions against self-incrimination is to prohibit compelling testimony of a self-incriminating kind from a party or a witness. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826 (1966). Thus, it appears that defendant may indeed have an adequate basis for invoking the protections of the Fifth Amendment.

In an analogous situation, courts have found witnesses who invoked the Fifth Amendment were "unavailable" for purposes

450

of the hearsay rule. See, United States v. Long, 589 F.2d 92, 95 S.Ct. (2nd Cir. 1978); People v. Raffaelli, 701 P.2d 881, 883 (Colo. App. 1985).

Likewise, in this instance, defendant's assertion of his rights under the Fifth Amendment render him effectively unavailable for purposes of plaintiff's inquiry. Plaintiff has sought to obtain information regarding the substance of defendant's January 20, 1988 conversation with King and has been unsuccessful. Since there are only two known parties to this conversation, the only method available to plaintiff to determine the substance of this conversation is to depose King.

The second prong of the court's inquiry is whether the information sought by plaintiff "goes to the heart of the matter." Plaintiff's complaint has alleged that defendant "did maliciously, falsely, and slanderously cause to have published to members of the public accusations against plaintiff whereby defendant accused plaintiff of obtaining $11,000 in money from the Surf Hotel and/or Adrian Johnston the manager of the Surf Hotel with their consent, by means of a wrongful use of actual or threatened force, violence or fear, or under color of official right ..." Defendant has denied this allegation.

Plaintiff now seeks to learn the contents of defendant's statements to King which lead to the publication in the PDN on January 21, 1988 of the article in which defendant appears to have accused plaintiff of obtaining $11,000 by means of force, violence or fear. Clearly, anything which defendant

451

may have said regarding plaintiff's alleged conduct goes to the very heart of plaintiff's lawsuit.

Similarly, the information sought from King is of a certain relevance to plaintiff's suit since the contents of defendant's statements to King which King purported to paraphrase in the second and third paragraphs of the article in question would tend to prove or disprove a material fact; that being, whether defendant actually made utterances which could be construed as alleging that plaintiff took a bribe.

Finally, since plaintiff's suit is primarily a defamation action this is the type of case in which disclosure of defendant's statements regarding plaintiff is warranted.

News reporters enjoy a qualified privilege, derived from the First Amendment guarantee of free speech, to withhold from discovery in civil cases confidential or non-confidential sources, materials, or other information where such discovery would impinge on the ability of the media to gather and disseminate news. This privilege must give way if the party seeking discovery can demonstrate that the testimony, material, or information sought is relevant enough, and otherwise unavailable, to outweigh the First Amendment interest of the media. A balancing analysis is the benchmark. Continental Cablevision v. Storer Broadcasting, supra, 583 F.Supp. at 435. In this case, the scale clearly tips in favor of discovery.

## SCOPE OF EXAMINATION

Although plaintiff will be allowed to go forward with

452

King's deposition, First Amendment considerations dictate that the scope of plaintiff's examination be limited to those matters which are relevant and go to the heart of plaintiff's action.

In reviewing the January 21, 1988 news article which appears to have been the genesis of plaintiff's suit, the second and third paragraphs of that article provide the basis from which plaintiff's defamation claim emanates. These two paragraphs read as follows:

> "In an interview after the grand jury proceedings, former personnel office employee Frank Matsunaga said he told the jury panel he was ordered by Mafnas to pick up checks totaling about $11,000 from Surf Hotel Manager Adrian Johnston.
>
> Matsunaga said the checks were part of an attempt by Johnston to get approval for an extension of the hotel's land lease."

Therefore, the scope of plaintiff's examination of King will be limited to questions regarding King's recollection of any statements made by defendant which formed the basis for these two paragraphs. Plaintiff will also be able to question King about the identity of any other individual(s) who may have heard the conversation between defendant and King which prompted King to write this article.

Dated at Saipan, MP, this 14th day of June, 1988.

Robert A. Hefner, Chief Judge