RE/MAX INTERNATIONAL,
INC., Plaintiff,

v.

CENTURY 21 REAL ESTATE CORPO-
RATION, Century 21 of the Rocky
Mountains, Inc., and Century 21 McDer-
mott & Associates, Inc., Defendants.

Civ. A. No. 94–B–412.

United States District Court,
D. Colorado.

March 4, 1994.

James A. Clark, Todd L. Lundy, and Ju-
dith M. Krieg, Baker & Hostetler, Denver,
CO, for Denver Pub. Co.

John M. Kobayashi and Karen E. Robert-
son, Kobayashi & Associates, P.C., Denver,
CO, for defendants.

MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Non-party Denver Publishing Company,
doing business as Rocky Mountain News (the
*News*) and John Rebchook (Rebchook) move
pursuant to Fed.R.Civ.P. 45 to quash the
subpoena served on Rebchook. This subpoe-
na requires Rebchook to provide deposition
testimony in Century 21 Real Estate Corpo-
ration v. RE/MAX South County et al., No.
SA CV 93–567 AHS (C.D.Cal.1993). This
issue is before me because it is related to the
above captioned action, no. 93–B–1196, filed
in this court. In fact, there are four related
cases pending in United States District
Courts. The two other cases are:

a. Century 21 Real Estate Corporation v.
Hearth-stone Realty Corp. d/g/a RE/MAX
Hearthstone, No. 93–11013–MA (D.Mass.
1993); and,

b. Century 21 Real Estate Corporation v.
M.J. Lyn Realty, Inc. d/b/a RE/MAX Ultra
Realty Group, et al., No. 93–0928–Civ–
Moore (S.D.Fla.1993).

I.

In the California case, plaintiff Century 21
(Century 21/California) brings claims under
the Lanham Act, California's Unfair Practic-
es Act, Uniform Trade Secrets Act, and com-
mon law claims for constructive trust, quasi-
contract, and unfair competition arising out
of Re/Max's alleged nationwide advertising
and promotional campaign. This campaign
includes statements allegedly made in televi-
sion, radio and print advertising nationwide,
and claims made by Re/Max's agents in face-
to-face contacts with potential and actual
consumers. Essentially, Century 21/Califor-
nia alleges that Re/Max made false state-
ments about its sales volume, number of
transactions, customer satisfaction, and the
size of the industry.

At issue here are statements made by
Dave Liniger (Liniger), president of Re/Max,
concerning a "challenge" to his competitors,

including Century 21, to determine which real estate company is the best. ·Rebchook, a *News* reporter, interviewed Liniger on February 22, 1993, and wrote a story about this challenge. The *News* published Rebchook's article. Rebchook wrote a follow-up story on the challenge which was published in the *News*' March 16, 1993 edition. Liniger was recently deposed and I have read the articles in light of the relevant portions of his deposition.

Before deposing Liniger, Century 21/California served a subpoena on the *News* commanding its custodian of records to appear and produce "any and all documents which set forth, reflect, comprise and/or constitute that certain interview of David Liniger which appeared in the Rocky Mountain News ...". In addition, Rebchook was served with a subpoena to testify by deposition. Defendant Century 21 Real Estate Corporation, appearing on behalf of Century 21/California (collectively Century 21), represents that it seeks the documents and testimony at issue here solely to authenticate Liniger's statements set forth in the articles. Other than the articles themselves, the *News* represents that its custodian of records has no documents responsive to Century 21/California's subpoena. Therefore, the only issue before me is whether Century 21/California is entitled to depose Rebchook.

## II.

The *News* and Rebchook move to quash Rebchook's subpoena on the grounds that the testimony sought by Century 21/California is protected from disclosure under the qualified reporter's privilege and the First Amendment of the United States Constitution. Additionally, the *News* argues that the subpoena should be quashed pursuant to Fed. R.Civ.P. 45(c)(3)(A)(iii) and (iv) because it requires disclosure of privileged matter and subjects Rebchook to undue burden.

The recognition of a qualified reporter's privilege under the First Amendment to the United States Constitution arises from *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), in which, notwithstanding its closely-divided but limited holding that reporters must testify in Grand Jury proceedings, the Court recognized the existence of protection for news gathering. In a concurring opinion, Justice Powell expressed his concern about the temptation to use the media as unofficial investigators if parties are not required to exhaust all possible alternative ·sources before subpoenaing reporters to testify. *Id.* at 709–710, 92 S.Ct. at 2670–2671. The *Branzburg* decision spawned numerous opinions by federal courts ·adopting a qualified reporters privilege. *See, e.g., Silkwood v. ·Kerr–McGee Corp.*, 563 F.2d ·433, 437 (10th Cir.1977) (holding that. the existence of a qualified reporter's privilege "is no longer in doubt"); *see also, U.S. v. Burke*, 700 F.2d 70, 77 (2nd Cir.), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d. 85 (1983); *U.S. v. Cuthbertson*, 651 F.2d 189, 195–196 (3rd Cir.), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981).

■ To overcome the newsperson's privilege under the First Amendment, the party seeking information from a reporter has the burden of showing that 1) the information sought is centrally relevant, and 2) the information is unavailable from other sources. *Silkwood*, 563 F.2d at 438. The qualified privilege applies in civil and criminal cases. *See Silkwood*, 563 F.2d at 438 (recognizing the privilege in a civil case); *Burke*, 700 F.2d at 77 (recognizing the privilege in a criminal case).

While *Silkwood* was concerned with the reporter's privilege in protecting its confidential source, the privilege is broader. As stated in *Loadholtz v. Fields*, 389 F.Supp. 1299, 1302–03 (M.D.Fla.1975):

This distinction· [between confidential and nonconfidential sources] is utterly irrelevant to the "chilling effect" that the enforcement of these subpoenas would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants.

*Accord U.S. v. Blanton*, 534 F.Supp. 295, 297 (S.D.Fla.1982) .("although no confidential source or information is involved, this distinction is irrelevant to the chilling effect en-

forcement of the subpoena would have on the flow of information to the press and public"); *Application of Consumers Union of U.S., Inc.*, 495 F.Supp. 582, 586 (S.D.N.Y.1980) ("[the] contention that the discovery is outside a First Amendment concern because it does not seek to identify confidential sources is a total misconception of the scope of the free press interest").

█ Century 21/California fails to overcome the reporter's qualified privilege as set forth in *Silkwood.* Specifically, Century 21/California fails to show that the information it seeks from Rebchook is *substantially* relevant to the central issue in the California case and the information its seeks cannot be obtained from other reasonable sources. Quite the contrary, the doctrine *de minimis non curat lex* finds apt application here.

The primary issue, as framed in Century 21/California's complaint, is the substantive basis for Re/Max's advertising and promotional messages. Rebchook has no personal knowledge as to the substantive basis for Liniger's statements. The only possible value in deposing Rebchook is to impeach Liniger's deposition testimony. After comparing Liniger's deposition testimony to the statements attributed to him in Rebchook's articles, I conclude that deposing Rebchook offers *de minimis* impeachment value. With the exception of one exchange (Liniger deposition, p. 27, l.11—p. 28, l.16), Liniger substantially confirms or cannot recall whether he made the statements attributed to him in Rebchook's article. As for the one exception, its impeachment value is minimal and, thus, not substantially relevant to Century 21/California's case. I conclude under the circumstances here that Rebchook's First Amendment interest outweighs Century 21/California's interest in deposing him.

As for the second prong of the *Silkwood* test, assuming arguendo Liniger's impeachment is critical to Century 21/California's case, I am not persuaded that Century 21/California has independently attempted to obtain similar impeachment evidence elsewhere and has been unsuccessful. *Silkwood*, 563 F.2d at 438. Indeed, Century 21 admits having some impeachment evidence already in its possession. Essentially, Century 21 argues that the qualified reporter's privilege is overcome here because Rebchook's testimony is anticipated to provide stronger impeachment evidence. Century 21 offers no legal authority to support this argument. Furthermore, *Silkwood* leads to an opposite conclusion. Under *Silkwood*, if Rebchook is not the only source for this evidence, the second prong of the test is not met. Rebchook is shown not to be the only source available for the impeachment evidence. Therefore, Century 21/California fails to meet the second prong of the *Silkwood* test. Accordingly, I will grant the *News'* motion to quash Rebchook's subpoena.

The *News* and Rebchook further contend that Rebchook's testimony is protected under Colorado's newsperson's privilege statute, § 13–90–119. In response, Century 21 argues that under § 13–90–119(4), 6A C.R.S. (1993 Cum.Supp.) the *News* and Rebchook waived any privilege of nondisclosure that they may have had to the information in Rebchook's articles or the identity of its source when it voluntarily disclosed and published Rebchook's articles and its source. Because I am granting the *News'* motion on the basis of the federal common law reporters' privilege, I need not address whether Rebchook's testimony is also privileged under Colorado's Newsperson's Privilege Statute, § 13–90–119.

ACCORDINGLY, it is ORDERED that:

1) Century 21/California's subpoena requiring the deposition testimony of Rebchook is QUASHED;

2) Non-party Denver Publishing Company is awarded its costs in prosecuting this motion.