AMENDED PER ORDER FILED NOVEMBER 3, 2005

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed November 2, 2005

No. 04-5301

WEN HO LEE,
APPELLEE

v.

DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

JEFF GERTH,
APPELLANT

———

Consolidated with
04-5302, 04-5321, 04-5322, 04-5323

———

Appeals from the United States District Court
for the District of Columbia
(No. 99cv03380)

———

On Petitions for Rehearing En Banc

———

Before: GINSBURG, *Chief Judge*, EDWARDS,** SENTELLE,
HENDERSON, RANDOLPH, ROGERS,** TATEL,** GARLAND,**
BROWN* AND GRIFFITH,* *Circuit Judges*.

## **O R D E R**

Appellants' petitions for rehearing en banc in Nos. 04-5302, 04-5321, 04-5322, and 04-5323, and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the petitions. Upon consideration of the foregoing, it is

**ORDERED** that the petitions be denied.

### **Per Curiam**

**FOR THE COURT**:
Mark J. Langer, Clerk


BY:
Michael C. McGrail
Deputy Clerk


\* Circuit Judges Brown and Griffith did not participate in this matter.

\*\* Circuit Judges Edwards, Rogers, Tatel, and Garland would grant the petitions for rehearing en banc.

\*\* A separate statement by Circuit Judge Rogers, dissenting from the denial of rehearing en banc, is attached.

\*\* A separate statement by Circuit Judge Tatel, with whom Circuit Judge Garland joins, dissenting from the denial of

rehearing en banc, is attached.

\*\* A separate statement by Circuit Judge Garland, with whom Circuit Judge Tatel joins,  dissenting from the denial of rehearing en banc, is attached.

ROGERS, *Circuit Judge*, dissenting from the denial of rehearing en banc:

The important First Amendment protections implicated in these cases are obvious. Our decision in *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), acknowledges as much. Until very recently, in this case, *Lee v. Department of Justice*, 413 F.3d 53 (D.C. Cir. June 28, 2005), the court has not had occasion to define the contours and describe with precision the standards illustrated by *Carey v. Hume*, 492 F.2d 631, 639 (D.C. Cir. 1974), and *Zerilli*, 656 F.2d at 711, in particular as they apply in discovery disputes arising from Privacy Act claims. *Carey* provides no unambiguous guidance because it did not encounter a claim under the Privacy Act, 5 U.S.C. § 552(a) (2000), which was first enacted in late 1974, Pub. L. No. 93-579, 88 Stat. 1896 (Dec. 31, 1974). Although *Zerilli* addressed both Privacy Act and Fourth Amendment-based claims, 656 F.2d at 715, *Zerilli* may be characterized as a decision resting upon the failure of the appellants to meet the exhaustion requirement. *See id*. at 714; *see also id.* at 718 (concurring opinion). That there are different views regarding the proper application of *Zerilli* in Privacy Act cases is evident. *Compare*, *e.g.*, Petition for Panel Rehearing and/or Rehearing En Banc of Appellant James Risen at 6; *infra* Statement of Judge Tatel dissenting from denial of rehearing en banc ("the panel never balanced the public and private interests") *with* Response of Appellee Wen Ho Lee to Petitions for Panel Rehearing and/or Rehearing En Banc at 13; *Lee,* 413 F.3d at 56 ("*Zerilli* set out two guidelines to determine when a plaintiff may compel a non-party journalist to testify to the identity of his confidential sources."). Regardless, the Petitions for Rehearing now present significant issues, which meet the applicable threshold for rehearing en banc, Fed. R. App. P. 35(a)(2), regarding both the standard for appellate review and comprehensiveness of the necessary balancing analysis. Therefore, I would grant the petitions for rehearing en banc.

TATEL, *Circuit Judge*, with whom GARLAND, *Circuit Judge*, joins, dissenting from the denial of rehearing en banc:

Over two decades ago, in *Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981), this circuit recognized that because "journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant," "[c]ompelling a reporter to disclose the identity of a source may significantly interfere with [the press's] news gathering ability." Joining the overwhelming majority of our sister circuits,[*] we therefore held that "a qualified reporter's privilege under the First Amendment should be readily available in civil cases." *Id.* at 712. That said, we recognized that even the manifest interest in an unfettered press must sometimes give way to the important interest in affording a litigant a fair opportunity to right legal wrongs. Accordingly, we enunciated a "balancing approach": "[T]o determine whether the privilege applies courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." *Id.* But given the First Amendment values at stake, we emphasized that "in all but the most exceptional cases," "the civil litigant's interest in disclosure should yield to the journalist's privilege." *Id.*

---

[*] *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 593-99 (1st Cir. 1980); *Baker v. F & F Inv.*, 470 F.2d 778, 783 (2d Cir. 1972); *Riley v. City of Chester*, 612 F.2d 708, 715-16 (3d Cir. 1979); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980); *Cervantes v. Time, Inc.*, 464 F.2d 986, 992-93 (8th Cir. 1972); *Shoen v. Shoen*, 48 F.3d 412, 415-16 (9th Cir. 1995); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 436-37 (10th Cir. 1977); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986). *But see Storer Commc'ns, Inc. v. Giovan (In re Grand Jury Proceedings)*, 810 F.2d 580, 584-85 (6th Cir. 1987); *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003).

In this case, the panel never balanced the public and private interests. Instead, it considered just two of what *Zerilli* calls the "number of more precise guidelines [that] can be applied to determine how the balance should be struck in a particular case," *id.* at 713—namely, whether the sources' identities go "to the heart of" the plaintiff's claim and whether the plaintiff has exhausted "every reasonable alternative source of information," *Lee v. U.S. Dep't of Justice*, No. 04-5301, slip op. at 11 (D.C. Cir. June 28, 2005) (quoting *Zerilli*, 656 F.2d at 713). Because the panel's arid two-factor test allows the exigencies of even the most trivial litigation to trump core First Amendment values, I believe this case is of "exceptional importance" and merits the full court's attention. Fed. R. App. P. 35(a)(2).

Normally, when a litigant seeks to discover the fruits of a journalist's work, a privilege analysis limited to need and exhaustion protects both the private interest in disclosure and the public interest in newsgathering. By utilizing the traditional tools of discovery to exhaust "every reasonable alternative source of information," the civil litigant seeking information that goes "to the heart of the matter" can usually discover the same facts that the journalist unearthed.

The situation is very different where the identity of a leaker is itself "the heart of the matter"—as it is here; as it will be in any Privacy Act case, *see* sep. op. (Garland, J., dissenting from the denial of rehearing en banc); and as it was in *In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964 (D.C. Cir. 2005), where the grand jury was attempting to determine whether the leaker had committed a felony. In such cases, a litigant's efforts, however exhaustive, are unlikely to identify the reporter's source. Lee's unsuccessful attempt to uncover the source (or sources) of the leaks in this case illustrates why: Because the confidential exchange of information leaves neither paper trail nor smoking gun, the great majority of leaks will

likely be unprovable without evidence from either leaker or leakee. A test focused only on need and exhaustion will therefore almost always be satisfied, leaving the reporter's source unprotected regardless of the information's importance to the public. *See id*. at 997 (Tatel, J., concurring). The panel's failure to "balance . . . [Lee's] interest in compelled disclosure [against] the public interest in protecting a newspaper's confidential sources" thus converts this rather ordinary Privacy Act case—and any run-of-the-mill leak case like it—into a "most exceptional case[]" in which, contrary to *Zerilli*, the reporter's interest must give way. *Zerilli*, 656 F.2d at 712.

The outcome here illustrates the risk of limiting our inquiry to only need and exhaustion. Without slighting Lee's private interest in receiving compensation for governmental malfeasance, his claim pales in comparison to the public's interest in avoiding the chilling of disclosures about what the government then believed to be nuclear espionage. This case is thus very different from *In re Grand Jury*. Not only was that a criminal case, but there we held that the grand jury's interest in securing the name of a source suspected of committing a felony outweighed any applicable privilege. *In re Grand Jury*, 397 F.3d at 973. Lee's private interest in this civil suit implicates no similarly critical concerns, and it's hard to imagine how his interest could outweigh the public's interest in protecting journalists' ability to report without reservation on sensitive issues of national security. Instead of explaining why he believes his private litigation interest is sufficiently weighty to tip the scale in his favor, Lee asserts only that "[t]here is simply no countervailing interest to 'balance.'" Respondent's Br. 14. Lee is wrong. As *Zerilli* holds, the countervailing interest is the value, rooted in the First Amendment, of an "unfettered press" that ensures that citizens are "able to make informed political, social, and economic choices." *Zerilli*, 656 F.2d at 711.

GARLAND, *Circuit Judge*, with whom TATEL, *Circuit Judge*, joins, dissenting from the denial of rehearing en banc:

The significance of the court's decision in this case should not be underestimated. In many cases involving leaks of government information concerning identifiable individuals, those individuals will have viable claims under the Privacy Act. Moreover, the Act is not limited to private individuals. It is equally available to public officials -- and to former public officials -- whether they have been accused of corruption or merely of incompetence. It would, for example, be available to former officials seeking to learn who leaked the information that forced them to resign in their administration's own Watergate.

Barring an unexpected confession by the leaker, in most such cases the subject of the leak will be able to satisfy the centrality and exhaustion requirements cited in the court's opinion. Thus, if the reporter's privilege is limited to those requirements, it is effectively no privilege at all. Plaintiffs wielding Privacy Act suits will routinely succeed in putting reporters who receive whistleblower leaks to the choice of testifying or going to jail. And bridled by nothing other than plaintiffs' private interests, the more such strategies succeed, the more they will be employed. Indeed, where former officials have themselves been indicted, they may find that issuing third-party subpoenas to reporters in Privacy Act suits usefully supplements criminal discovery.

All of this is inconsistent with the commitment we made in *Zerilli*, where we promised that, "when striking the balance between the civil litigant's interest in compelled disclosure and the public interest in protecting a newspaper's confidential sources, we will be mindful of the preferred position of the First Amendment and the importance of a vigorous press." *Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981). As we explained: "[I]f the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished.

Unless potential sources are confident that compelled disclosure is unlikely, they will be reluctant to disclose any confidential information to reporters." *Id.* And if our case law has that consequence, it will undermine the Founders' intention to protect the press "so that it could bare the secrets of government and inform the people." *New York Times Co. v. United States*, 403 U.S. 713, 717 (Black, J., concurring).

The only way to render the reporter's privilege effective in the face of Privacy Act claims is to include the requirement, adopted in *Zerilli* and detailed in Judge Tatel's dissent, *see* sep. op. at 2-3 (Tatel, J., dissenting from denial of rehearing en banc), that the court "weigh[] the public interest in protecting the reporter's sources against the private interest in compelling disclosure," *Zerilli*, 656 F.2d at 712. Because that requirement is absent from the court's opinion, I would grant the petition for rehearing en banc.