TATEL, Circuit Judge,
with whom GARLAND, Circuit Judge, joins, dissenting from the denial of rehearing en banc.
Over two decades ago, in Zerilli v. Smith, 656 F.2d 705, 711 (D.C.Cir.1981), this circuit recognized that because “journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant,” “[cjompelling a reporter to disclose the identity of a source may significantly interfere with [the press’s] news gathering ability.” Joining the overwhelming majority of our sister circuits,[6] we therefore held that “a qualified reporter’s privilege under the First Amendment should be readily available in civil cases.” Id. at 712. That said, we recognized that even the manifest interest in an unfettered press must sometimes give way to the important interest in affording a litigant a fair opportunity to right legal wrongs. Accordingly, we enunciated a “balancing approach”: “[T]o determine whether the privilege applies courts should look to the facts of each case, weighing the public interest in protecting the reporter’s sources against the private interest in compelling disclosure.” Id. But given the First Amendment values at stake, we emphasized that “in all but the most exceptional cases,” “the civil litigant’s interest in disclosure should yield to the journalist’s privilege.” Id.
In this case, the panel never balanced the public and private interests. Instead, it considered just two of what Zerilli calls the “number of more precise guidelines [that] can be applied to determine how the balance should be struck in a particular case,” id. at 713 — namely, whether the sources’ identities go “to the heart of’ the plaintiffs claim and whether the plaintiff has exhausted “every reasonable alternative source of information,” Lee v. Dep’t of Justice, 413 F.3d 53, 57 (D.C.Cir.2005) (quoting Zerilli, 656 F.2d at 713). Because the panel’s arid two-factor test allows the exigencies of even the most trivial litigation to trump core First Amendment values, I believe this case is of “exceptional importance” and merits the full court’s attention. Fed. R.App. P. 35(a)(2).
Normally, when a litigant seeks to discover the fruits of a journalist’s work, a privilege analysis limited to need and exhaustion protects both the private interest in disclosure and the public interest in newsgathering. By utilizing the traditional tools of discovery to exhaust “every reasonable alternative source of information,” the civil litigant seeking information that goes “to the heart of the matter” can usually discover the same facts that the journalist unearthed.
The situation is very different where the identity of a leaker is itself “the heart of *302 the matter” — as it is here; as it will be in any Privacy Act case, see sep. op. (Garland, J., dissenting from the denial of rehearing en banc); and as it was in In re Grand Jury Subpoena, Judith Miller, 397 F.3d 964 (D.C.Cir.2005), where the grand jury was attempting to determine whether the leaker had committed a felony. In such cases, a litigant’s efforts, however exhaustive, are unlikely to identify the reporter’s source. Lee’s unsuccessful attempt to uncover the source (or sources) of the leaks in this case illustrates why: Because the confidential exchange of information leaves neither paper trail nor smoking gun, the great majority of leaks will likely be unprovable without evidence from either leaker or leakee. A test focused only on need and exhaustion will therefore almost always be satisfied, leaving the reporter’s source unprotected regardless of the information’s importance to the public. See id. at 997 (Tatel, J., concurring). The panel’s failure to “balance ... [Lee’s] interest in compelled disclosure [against] the public interest in protecting a newspaper’s confidential sources” thus converts this rather ordinary Privacy Act case — -and any run-of-the-mill leak case like it — into a “most exceptional case[]” in which, contrary to Zerilli, the reporter’s interest must give way. Zerilli, 656 F.2d at 712.
The outcome here illustrates the risk of limiting our inquiry to only need and exhaustion. Without slighting Lee’s private interest in receiving compensation for governmental malfeasance, his claim pales in comparison to the public’s interest in avoiding the chilling of disclosures about what the government then believed to be nuclear espionage. This case is thus very different from In re Grand Jury. Not only was that a criminal case, but there we held that the grand jury’s interest in securing the name of a source suspected of committing a felony outweighed any applicable privilege. In re Grand Jury, 397 F.3d at 973. Lee’s private interest in this civil suit implicates no similarly critical concerns, and it’s hard to imagine how his interest could outweigh the public’s interest in protecting journalists’ ability to report without reservation on sensitive issues of national security. Instead of explaining why he believes his private litigation interest is sufficiently' weighty to tip the scale in his favor, Lee asserts only that “[t]here is simply no countervailing interest to ‘balance.’ ” Respondent’s Br. 14. Lee is wrong. As Zerilli holds, the countervailing interest is the value, rooted in the First Amendment, of an “unfettered press” that ensures that citizens are “able to make informed political, social, and economic choices.” Zerilli, 656 F.2d at 711.

. Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 593-99 (1st Cir.1980); Baker v. F & F Inv., 470 F.2d 778, 783 (2d Cir.1972); Riley v. City of Chester, 612 F.2d 708, 715-16 (3d Cir.1979); LaRouche v. Nat’l Broad. Co., 780 F.2d 1134, 1139 (4th Cir.1986); Miller v. Transamerican Press, Inc., 621 F.2d 721, 725 (5th Cir.1980); Cervantes v. Time, Inc., 464 F.2d 986, 992-93 (8th Cir.1972); Shoen v. Shoen, 48 F.3d 412, 415-16 (9th Cir.1995); Silkwood v. Kerr-McGee Corp., 563 F.2d 433, 436-37 (10th Cir.1977); United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir.1986). But see Storer Commc’ns, Inc. v. Giovan (In re Grand Jury Proceedings), 810 F.2d 580, 584-85 (6th Cir.1987); McKevitt v. Pallasch, 339 F.3d 530, 533 (7th Cir.2003).